COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
DANIELLE PIERRE (300567)
(dpierre@cooley.com)
DARINA SHTRAKHMAN (324109)
(dshtrakhman@cooley.com)
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:   (415) 693-2000
Facsimile:   (415) 693-2222

Attorneys for Defendants
KANYE OMARI WEST,
and YEEZY APPAREL LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYCHANNEL, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> KANYE OMARI WEST, Individually, and YEEZY APPAREL LLC, a California limited liability company, <br><br> Defendants. | Case No. 2:20-cv-07732-JFW-JC <br><br> **DEFENDANTS KANYE OMARI WEST AND YEEZY APPAREL LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** <br><br> Date:        December 14, 2020 <br> Time:        1:30 p.m. <br> Courtroom:   7A <br> Judge:       Hon. John F. Walter |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................ 2

II.   FACTUAL BACKGROUND ................................................ 3

III.  MOTION TO DISMISS STANDARD .................................... 7

IV.   ARGUMENT ..................................................................... 7

A.    Plaintiff Fails to State Sufficient Facts To Show That Defendants Breached The NDA (First Claim for Relief). .................. 7

B.    The Third, Fourth, and Fifth Claims For Relief All Fail Because The Complaint Confirms There Was No Partnership Agreement. ........ 9

1.    California Law Applies ............................................ 10

2.    The Term Sheet's Requirement of "Definitive Agreements" Precludes Any Finding of an Implied Partnership. ........................................................ 11

3.    Plaintiff's Inability to Identify Material Terms of the Alleged Partnership Underscores the Absence of Any Agreement .............................................................. 13

4.    Plaintiff's Fiduciary Duty Claim Fails for Additional Reasons. ........................................................... 15

C.    Plaintiff's Promissory Estoppel Claim (Second Claim for Relief) Also Fails as a Matter of Law. .................................. 17

D.    Plaintiff's Claims for Quantum Meruit and Unjust Enrichment Also Fail Because They are Contradicted by the Term Sheet. ........... 21

V.    CONCLUSION ................................................................ 21

1

## TABLE OF AUTHORITIES

2
                                                                                        **Page**

3
**Cases**

4

5
*Acme Markets, Inc. v. Fed. Armored Exp., Inc.*,
   648 A.2d 1218 (Pa. Super. 1994) ................................................................... 9

6

7
*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004) ....................................................................... 7

8

9
*Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*,
   2011 WL 3703192 (S.D. Cal. Aug. 23, 2011) ............................................. 16

10

11
*Azco Biotech, Inc. v. Qiagen, N.V.*,
   2015 WL 12516024 (S.D. Cal. July 2, 2015) ........................................ 18, 21

12
*Banner Ent., Inc. v. Super. Ct.*,
   62 Cal. App. 4th 348 (1998) ....................................................................... 14

13

14
*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) .................................................................................. 7, 8

15

16
*Burton Imaging Grp. v. Toys "R" Us, Inc.*,
   502 F. Supp. 2d 434 (E.D. Pa. 2007) ......................................................... 20

17

18
*Bustamante v. Intuit, Inc.*,
   141 Cal. App. 4th 199 (2006) ............................................................... 14, 15

19

20
*Carlisle Med. Grp., LLC v. Eldohiri*,
   2017 WL 783433 (M.D. Pa. Mar. 1, 2017) .................................................. 8

21

22
*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
   43 Cal. 4th 375 (2008) .......................................................................... 16, 17

23

24
*City Solutions, Inc. v. Clear Channel Commc'ns, Inc.*,
   201 F. Supp. 2d 1048 (N.D. Cal. 2002) ..................................................... 16

25
*Columbia Pictures Television v. Krypron Broad. of Birmingham, Inc.*,
   106 F.3d 284 (9th Cir. 1997) ...................................................................... 18

26

27
*Comercializadora Recmaq Limitada v. Hollywood Auto Mall, LLC*,
   2013 WL 2248140 (S.D. Cal. May 20, 2013) ............................................. 16

28

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

ii

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC**

1

## TABLE OF AUTHORITIES
(continued)

2                                                                    **Page**

3    *Crouse v. Cyclops Indus.,*
4       745 A.2d 606 (Pa. 2000) .......................................................... 18

5    *Cunningham v. Prudential Prop. & Cas. Ins. Co.,*
6       340 Pa. Super. 130 (1985) ......................................................... 9

7    *Daniels v. Select Portfolio Servicing, Inc.,*
8       246 Cal. App. 4th 1150 (2016) ................................................ 19

9    *In re Dimas, LLC,*
        2007 WL 2127312 (Bankr. N.D. Cal. July 23, 2007) ............... 14
10

11   *Ehlert v. Am.'s Servicing Co.,*
        2011 WL 4862426 (S.D. Cal. Oct. 12, 2011) .......................... 19
12

13   *Ersa Grae Corp. v. Fluor Corp.,*
        1 Cal. App. 4th 613 (1991) .................................................... 15

14
     *eToll, Inc. v. Elias/Savion Advert., Inc.,*
15      811 A.2d 10 (Pa. Super. 2002) ............................................... 17

16   *Garcia v. World Sav., FSB,*
17      183 Cal. App. 4th 1031 (2010) ............................................... 20

18   *Granadino v. Wells Fargo Bank, N.A,*
19      236 Cal. App. 4th 411 (2015) ................................................. 20

20   *Greene v. Brooks,*
        235 Cal. App. 2d 161 (1965) .................................................. 11
21

22   *J.B. Enters. Int'l v. Sid & Marty Kroft Pictures Corp.,*
        2003 WL 21037837 (C.D. Cal. Mar. 3, 2003) ........................ 20
23

24   *Jolley v. Chase Home Finance, LLC,*
        213 Cal. App. 4th 872 (2013) ........................................... 18, 20

25   *Kahn Creative Partners, Inc. v. Nth Degree, Inc.,*
26      2011 WL 1195680 (C.D. Cal. Mar. 29, 2011) ....................... 14

27   *Lange v. TIG Ins. Co.,*
28      68 Cal. App. 4th 1179 (1998) ................................................. 19

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

iii

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT**
**2:20-CV-07732-JFW-JC**

1

2

## TABLE OF AUTHORITIES
(continued)

**Page**

3

4

*Leprino Foods Co. v. Gress Poultry, Inc.*,
  379 F. Supp. 2d 650 (M.D. Pa. 2005) ............................................... 11

5

6

*Liew v. Official Receiver & Liquidator*,
  685 F.2d 1192 (9th Cir. 1982) ........................................................ 10

7

8

*Louis Lesser Enters., Ltd. v. Roeder*,
  209 Cal. App. 2d 401 (1962) .......................................................... 12

9

10

*MDNet, Inc. v. Pharmacia Corp.*,
  147 F. App'x 239 (3d Cir. 2005) ..................................................... 19

11

*Mercado v. Hoefler*,
  190 Cal. App. 2d 12 (1961) ............................................................ 11

12

13

*Migdal v. Patel*,
  2003 WL 22422430 (Cal. App. Oct. 24, 2003) ............................... 12

14

15

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ............................................................ 7

16

17

*Okun v. Morton*,
  203 Cal. App. 3d 805 (1988) .......................................................... 14

18

19

*Pacific Hills Corp. v. Duggan*,
  199 Cal. App. 2d 806 (1962) .......................................................... 12

20

21

*Phillippe v. Shapell Indus., Inc.*,
  43 Cal. 3d 1247 (1987) ..................................................... 19, 20, 21

22

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
  77 F.3d 309 (9th Cir. 1996) ..................................................*passim*

23

24

*Sandberg v. Jacobson*,
  253 Cal. App. 2d 663 (1967) .......................................................... 15

25

26

*Smissaert v. Chiodo*,
  163 Cal. App. 2d 827 (1958) .......................................................... 12

27

28

*Store Props., Inc. v. Neal*,
  72 Cal. App. 2d 112 (1945) ............................................................ 12

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC**

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

4

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) .................................................................. 4

5

6

*Valenziano v. Orchard Enters., Inc.,*
   2011 WL 13217770 (C.D. Cal. Jan. 18, 2011) .................................... 21

7

8

*Washington Mut. Bank v. Super. Ct.,*
   24 Cal. 4th 906 (2001) ........................................................................ 10

9

10

*Weddington Prods., Inc. v. Flick,*
   60 Cal. App. 4th 793 (1998) .......................................................... 14, 15

11

*Zuback v. Bakmaz,*
   346 Pa. 279 (1943) .............................................................................. 11

12

13

**Statutes**

14

15 P.C.S.A.
   § 8415(c)(11) ...................................................................................... 11

15

   § 8422(a) .............................................................................................. 10

16

   § 8447(b) .............................................................................................. 10
   § 8447(d) .............................................................................................. 10

17

18

Cal. Corp. Code
   § 16103(b)(5) ...................................................................................... 11

19

   § 16202(a) ............................................................................................ 10

20

   § 16404(b) ............................................................................................ 10
   § 16404(d) ............................................................................................ 10

21

**Other Authorities**

22

23

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 7

24

L.R. 7-3 ................................................................................................... 1

25

26

27

28

FIRM NAME
ATTORNEYS AT LAW
OFFICE ADDRESS

v

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT**
**2:20-CV-07732-JFW-JC**

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on December 14, 2020, at 1:30 p.m. or as soon thereafter as this motion may be heard by the Honorable Judge John F. Walter in Courtroom 7A of the United States District Court for the Central District of California, 350 W. 1st Street, Los Angeles, CA 90012, Defendants Kanye Omari West ("Mr. West") and Yeezy Apparel LLC ("Yeezy") (collectively "Defendants") shall and hereby do move the Court for an order dismissing Plaintiff MyChannel, Inc.'s ("Plaintiff" or "MYC") Complaint filed on August 25, 2020 pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice and without leave to amend, on the grounds that it fails to state facts sufficient to state a claim.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings on file in this action, and any further evidence or argument that the Court may properly receive at or before the hearing.

This motion is made following meet and confer discussions among the parties in compliance with L.R. 7-3, which were initiated on November 2, 2020 and include Defendants' provision of a written outline of arguments to Plaintiff's counsel on November 5, 2020 and a telephonic discussion among lead counsel of the parties on November 9, 2020.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

1     **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.  INTRODUCTION**

3       The Complaint in this lawsuit is an overzealous effort to reap the rewards of a

4 business arrangement that never came to fruition.  From April to October 2018,

5 Plaintiff and its founders pursued a proposed business relationship with Defendants

6 to integrate Plaintiff's MYC Video Platform technology with certain aspects of

7 Yeezy's e-commerce business.  In that time, the parties exchanged a Non-Disclosure

8 Agreement ("NDA") and a Term Sheet reflecting the proposed "Strategic

9 Transaction."  *See* Compl. Exs. A & B.  This latter agreement reflected Defendant's

10 unequivocal statements that "This Term Sheet is *not a commitment* to consummate

11 the Strategic Transaction" and that the proposed transaction would not proceed unless

12 and *"until definitive agreements are executed* and delivered by all parties."  *See id.*

13 Ex. B, opening paragraphs (emphasis added).  No such definitive agreements were

14 ever consummated, as Plaintiff tacitly concedes in the Complaint.  Despite that,

15 Plaintiff claims an "oral partnership" arose based on unidentified events occurring in

16 August 2018 *after* it had received the Term Sheet reflecting the requirement of

17 "definitive agreements."  Compl. ¶¶ 30-31.  Plaintiff now seeks to recover the

18 benefits of the proposed transaction that never came to fruition, reimbursement of

19 amounts it spent pursuing the transaction, and damages for alleged breach of the

20 NDA.  Plaintiff's claims all fail as a matter of law for multiple reasons.

21       First, Plaintiff claims Defendant Yeezy breached the NDA by using Plaintiff's

22 "Confidential Information."  But the only support for that claim is the bare allegation

23 that Defendants' *Sunday Service* video channel included a "shoppable" feature—a

24 broad term that refers to an entire category of technologies.  The Complaint is devoid

25 of any facts to show that Defendants misappropriated and used *Plaintiff's* proprietary

26 technology.  But even accepting Plaintiff's conclusory allegations as true, the breach

27 of NDA claim would still fail because Plaintiff fails to allege that it met the conditions

28 precedent for triggering the NDA's protections.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

Second, Plaintiff asserts claims for violations of various partnership-related duties.[1]  But Plaintiff is not entitled to the benefits of a purported partnership that never arose.  Plaintiff cannot claim the parties reached a mutual agreement on an oral partnership when the Term Sheet shows Defendant insisted on "definitive agreements" as a condition of any business relationship.  Because the parties never executed such agreements, the Court should dismiss with prejudice all claims involving an alleged breach of purported partnership duties.

Third, Plaintiff asserts a promissory estoppel claim alleging that purported promises in the Term Sheet induced it to devote time and resources to the proposed relationship.  But Plaintiff was not entitled to rely on the expressly non-binding provisions of the Term Sheet as if they were definitive "promises."  Indeed, numerous courts including the Ninth Circuit Court of Appeal have dismissed promissory estoppel claims in precisely these circumstances.

For these reasons, the Court should grant this Motion to Dismiss and dismiss the Complaint in its entirety.

## II.   FACTUAL BACKGROUND[2]

Plaintiff is a technology company that, among other ventures, develops "shopping experience within third party video content" using technology it refers to as the "MYC Video Platform[.]"  Compl. ¶ 1.  MYC was founded in 2014 by its Chief Executive Office Julian Duggin ("Mr. Duggin") and Chief Operating Officer Gibran Gadsen (collectively "MYC Founders").  Defendant Mr. West is an acclaimed hip-hop superstar, record producer, fashion designer, and mogul.  In April 2020, Mr. West was recognized as a billionaire by Forbes thanks, in large part, to his lucrative footwear and apparel brand, Yeezy.  Mr. West is the sole owner of Defendant Yeezy,

---

[1] These include Plaintiff's claims for alleged violations of the duty of loyalty (third claim for relief), obligation of good faith and fair dealing (fourth claim), and fiduciary duties (fifth claim).

[2] Defendants categorically deny the allegations in the Complaint, which must be accepted as true only for purposes of this Motion.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

1  which he founded in 2017.

2  In an effort to grow MYC's business, the MYC Founders identified Mr. West

3  and his Yeezy brand as ideal collaborators to apply their MYC Video Platform.  *Id.*

4  *¶¶ 11, 13-14; see also id.* at 3:3.  In April 2018, Plaintiff sought out Mr. West to

5  discuss using the MYC Video Platform in connection with the Yeezy business.  *Id.*

6  *¶¶ 14-18; see also id.* at 2:26.  The MYC Video Platform enables "shoppable" video

7  content, *id.* ¶ 11, which refers generally to online videos with integrated e-commerce

8  features.  Plaintiff alleges that its MYC Video Platform differs from other types of

9  "shoppable" video content because it utilizes certain proprietary technology

10  involving artificial intelligence and other features.  *Id.* ¶¶ 1, 12.

11  After meeting with Mr. West in April 2018, the MYC Founders relocated to

12  California and then to Illinois to work on trying to integrate the MYC Video Platform

13  into Defendants' e-commerce business.  Compl. ¶¶ 21-22.  Plaintiff alleges they did

14  so because Mr. West promised that MYC would be "handsomely rewarded,"

15  including by "(a) being in partnership with Mr. West; (b) having MYC power

16  Yeezy's e-commerce business and share in the profits from increased sales, and

17  (c) Mr. West investing $10 million and other resources into the parties' venture."  *Id.*

18  ¶ 20.

19  On May 2, 2018, Plaintiff had Defendant Yeezy sign a non-disclosure

20  agreement to protect its "proprietary technology and ideas . . . ."  *See id.* ¶ 23, Ex. A.

21  To trigger the protections of the NDA, Plaintiff was required to specifically designate

22  information as "Confidential Information."  *Id.* Ex. A § 1.  After the parties executed

23  the NDA, the MYC Founders allegedly engaged Mr. West in "considerable

24  negotiations" to discuss the terms of a potential collaboration, which resulted in

25  Defendants furnishing Plaintiff "with a $10 million term sheet in June 2018[.]"[3]  *Id.*

26  ────────────

27  [3]  The Court can consider the terms of the NDA and Term Sheet because the
Complaint attaches them as exhibits.  *See United States v. Ritchie*, 342 F.3d 903, 908

28  (9th Cir. 2003) (noting that a court may consider "documents attached to the
complaint" when ruling on a motion to dismiss).

Cooley LLP
Attorneys at Law
San Francisco

4

Defendants' Motion to Dismiss
Plaintiff's Complaint
2:20-cv-07732-JFW-JC

¶¶ 24-30; *see also id.* Ex. B.  Plaintiff places great weight on the Term Sheet as the basis of its claims, alleging that "[i]t is this Term Sheet, coupled with Mr. West's promises of even more economic reward in the future, that understandably encouraged MYC and its founders to go 'all in' and devote all of their time and resources to the partnership."  Compl. ¶ 31.

The Term Sheet, however, confirmed that as of June 2018 the parties had no finalized agreement and were still negotiating towards a "Strategic Transaction," defined as a "proposed investment . . . and a related joint technology development collaboration . . . ."  *Id.* Ex. B, opening paragraph.  Critically, the Term Sheet stated multiple times that any final agreement was contingent on the successful negotiation and execution of "definitive agreements":

- "This Term Sheet is *not a commitment* to consummate the Strategic Transaction or otherwise invest in the Company, and is *conditioned on the completion of due diligence, legal review and documentation that is satisfactory to the Investor*."

- "No other legally binding obligations will be created *until definitive agreements are executed* and delivered by all parties."

- "The Strategic Transaction shall be consummated as soon as practicable following the Company's acceptance of this Term Sheet, *negotiation of definitive agreements* and satisfaction of the Conditions to Closing[.]"

*Id.*, opening paragraphs, ¶ 1 (emphases added).  The Term Sheet also made clear that Plaintiff would not be reimbursed for any expenses it chose to incur in the course of negotiating towards definitive agreements:  "Company and investor *shall each be responsible for its own expenses* incurred in connection with the negotiation of this Term Sheet and the Definitive Agreements."  *Id.* ¶ 13.

Plaintiff alleges that the negotiations contemplated in the Term Sheet were "ongoing" "[t]hroughout the summer months of 2018 . . . ."  Compl. ¶ 38.  The parties,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

however, never finalized the definitive agreements needed to implement the proposed Strategic Transaction. Despite the lack of any executed agreements, Plaintiff claims an "oral partnership" was formed "in or around August 2018." *Id.* ¶¶ 76-77. Plaintiff does not specify what occurred in August 2018 that led to the purported oral partnership. There is no allegation, for example, that Defendants waived the conditions they insisted on in the Term Sheet, requiring execution of "definitive agreements." Nor does Plaintiff allege that the parties ever completed the negotiations that were "ongoing" "throughout" summer 2018. Plaintiff does not allege, for example, that the parties ever reached resolution on the necessary terms of a partnership, including how profits and losses would be shared, how decisions would be made, or the duration of the partnership. Rather, Plaintiff alleges communications between the parties ceased sometime after October 2018, without an executed agreement in place. *Id.* ¶¶ 49-50.

A few months later, in early 2019, Mr. West launched his *Sunday Service*, a channel on which his "gospel group performed . . . but with an e-commerce twist" to drive sales of Yeezy-branded products. *Id.* ¶ 51. Plaintiff alleges that "the *Sunday Service* e-commerce component" used its "proprietary information and technology," because it included "'shoppable' functionality." *Id.* ¶¶ 52-53, 55. The Complaint does not explain whether this "shoppable" feature of the *Sunday Service* channel used the proprietary aspects of the MYC Video Platform. Nor does Plaintiff allege that it ever met the requirements of the NDA for specifically designating information as "Confidential Information" for protection under the NDA.

Plaintiff filed this action on August 25, 2020, alleging causes of action for: (1) breach of the NDA, (2) promissory estoppel, (3) violation of the duty of loyalty, (4) violation of the obligation of good faith and fair dealing, (5) breach of fiduciary duties, (6) unjust enrichment, and (7) quantum meruit.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

III.   **MOTION TO DISMISS STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  Where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory," the claim must be dismissed. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

IV.   **ARGUMENT**

   A.   **Plaintiff Fails to State Sufficient Facts To Show That Defendants Breached The NDA (First Claim for Relief).**

Plaintiff asserts that Defendant Yeezy breached the NDA by "using MYC's Confidential Information, including the technology that comprises the MYC Video Platform . . . to launch its" *Sunday Service* channel.  Compl. ¶ 66.  But the Complaint does not identify what specific proprietary technology of Plaintiff's was allegedly misappropriated and fails to support the logical leap that Defendants incorporated any such technology into *Sunday Service*.

First, Plaintiff's claim appears to hang solely on the allegation that *Sunday Service* includes "shoppable" functionality.  *Id*. ¶ 55.  This passing reference to a "shoppable" feature, however, cannot support a plausible claim for breach of the NDA.  *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (noting that mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss").  A "shoppable" video refers to a broad category of technologies that allow consumers to engage in e-commerce directly from a video.  Plaintiff does not allege, nor could it, that the MYC Video Platform encompasses all such technologies for enabling "shoppable" video content.  Plaintiff therefore cannot state a claim that Defendants breached the NDA merely by alleging that *Sunday Service* has a "shoppable" feature—just like it could not state a claim merely by pointing out that *Sunday Service* uses "e-commerce" or any other broad category of technology.  Notably, Plaintiff *does* point out certain allegedly "proprietary" aspects

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

of its MYC Video Platform, *see* Compl. ¶¶ 1, 12, but it does *not* allege that *Sunday Service* incorporates these features.  Absent such allegations, the mere reference to "shoppable" functionality in *Sunday Service* cannot support a claim because it could just as well refer to technology not covered by the NDA.[4]  *See Twombly*, 550 U.S. at 557 (explaining that facts consistent with wrongful conduct do not meet Rule 8 pleading standards if they could "just as well be" legitimate behavior).

Second, the Complaint does not allege sufficient facts to show that Defendants even had the opportunity to misappropriate the MYC Video Platform technology. While the Complaint refers repeatedly to Plaintiff's efforts to integrate the MYC Video Platform into Yeezy's e-commerce business, it does not allege that Plaintiff ever completed this integration.  Nor does the Complaint show that Plaintiff ever provided to Defendants any computer code, documentation, or other materials regarding the MYC Video Platform that could have enabled Defendants to independently integrate the technology into *Sunday Service*.  This omission makes Plaintiff's claim even more implausible.  *See, e.g.*, *Carlisle Med. Grp., LLC v. Eldohiri*, No. 1:15-cv-2367, 2017 WL 783433, at *4 (M.D. Pa. Mar. 1, 2017) (dismissing breach of contract claim where plaintiff failed to allege "when or how" the breach occurred, thus making the allegations insufficiently "plausible").[5]

Third, even if the Complaint adequately alleged that Defendants used Plaintiff's proprietary technology in *Sunday Service*, Plaintiff's claim would still fail because it does not adequately allege that conditions precedent in the NDA were met. Pennsylvania law is clear: where a contract is subject to a condition precedent, a plaintiff seeking recovery under a contract must allege either performance or a waiver

---

[4] The NDA provides that "Recipient's obligations . . . do not apply to any of information that Recipient can demonstrate: (a) is publicly available . . . through no fault of Recipient; (b) is rightfully in Recipient's possession free of any obligation of confidence . . . ."  Compl. Ex. A § 3.

[5] The NDA states that a claim for breach of its terms is governed by Pennsylvania law.  Compl. Ex. A § 13.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

of that condition.  *See Cunningham v. Prudential Prop. & Cas. Ins. Co.*, 340 Pa. Super. 130, 134-36 (1985).[6]  Here, the NDA expressly states that information is protected as "Confidential Information" ***only*** if the following specific steps are first taken:

> [I]nformation disclosed by Discloser . . . will be considered Confidential Information of Discloser by Recipient . . . ***only*** if the information (a) is provided as information fixed in tangible form or in writing . . . is conspicuously designated as 'Confidential' . . . or (b) if provided orally or visually, is identified as confidential at the time of disclosure and confirmed in writing within thirty (30) days of disclosure.

Compl. Ex. A § 1 (emphasis added).  Nowhere does the Complaint allege that Plaintiff complied with these conditions, and this failure is fatal to Plaintiff's breach of NDA claim.  Plaintiff's failure to allege compliance is particularly notable because the NDA is Plaintiff's own form agreement, and the fact of whether Plaintiff complied with its requirements is obviously a fact within Plaintiff's knowledge that should have been alleged if Plaintiff could do so in good faith. Under these circumstances, Plaintiff's breach of NDA claim should be dismissed with prejudice.

### B. The Third, Fourth, and Fifth Claims For Relief All Fail Because The Complaint Confirms There Was No Partnership Agreement.

Plaintiff's claims for alleged violations of the duty of loyalty (third claim for relief), obligation of good faith and fair dealing (fourth claim), and fiduciary duties (fifth claim)—are all premised on the purported existence of an implied partnership.

---

[6] A condition precedent refers to a condition that must occur before the agreement becomes effective or binding on the parties.  *Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 648 A.2d 1218, 1220 (Pa. Super. 1994).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

*See* Compl. ¶¶ 75-77 (relying on an "oral partnership" as the basis of the duty of loyalty); ¶¶ 85-88 (relying on the alleged partnership as the basis of the obligation of good faith and fair dealing); ¶¶ 79, 92 (alleging that the purported partnership imposed fiduciary duties and incorporating that allegation as the basis of the fiduciary breach claim). The Complaint, however, confirms no such partnership ever arose because Plaintiff admits the parties never executed definitive agreements as the Term Sheet required.

### 1.    California Law Applies.

As a preliminary matter, California substantive law applies to all claims premised on a purported partnership. Plaintiff claims Pennsylvania law applies to all claims because "the parties' NDA requires it as it relates to a breach of the NDA." Compl. ¶ 7. But the NDA does not purport to dictate the applicable law for all disputes among the parties and is expressly limited to disputes "arising out of or relating to *this Agreement* . . . ." *Id*. Ex. A § 13 (emphasis added). This choice of law provision does not apply to Plaintiff's claims premised on the formation of an implied partnership, which does not arise out of or relate to the NDA.

California law therefore presumptively applies because "[g]enerally speaking the forum will apply its own rule of decision . . . ." *See Washington Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 919 (2001) (internal quotations and citation omitted). The Court need not undertake the comparative "governmental interest analysis" because that analysis applies only if there is a material difference between Pennsylvania and California law. *Id. at 919-20; see also Liew v. Official Receiver & Liquidator*, 685 F.2d 1192, 1196 (9th Cir. 1982) (choice of law analysis required only if the two jurisdictions' laws "do differ"). Here, the Pennsylvania statutes that Plaintiff relies on for its third, fourth and fifth claims for relief are mirrored under California law. *Compare* 15 P.C.S.A. § 8422(a) and Cal. Corp. Code § 16202(a) (definition of a partnership); 15 P.C.S.A. § 8447(b) and Cal. Corp. Code § 16404(b) (duty of loyalty); 15 P.C.S.A. § 8447(d) and Cal. Corp. Code § 16404(d) (obligation

Cooley LLP
Attorneys at Law
San Francisco

10

Defendants' Motion to Dismiss
Plaintiff's Complaint
2:20-cv-07732-JFW-JC

of good faith and fair dealing); 15 P.C.S.A. § 8415(c)(11) and Cal. Corp. Code § 16103(b)(5) (eliminating the obligation of good faith and fair dealing in the partnership agreement).[7]  Because there is no material conflict, California law applies.

### 2.    The Term Sheet's Requirement of "Definitive Agreements" Precludes Any Finding of an Implied Partnership.

"The burden of proving the existence of a partnership lies upon the party asserting its existence . . . ."  *See Mercado v. Hoefler*, 190 Cal. App. 2d 12, 16 (1961); *Zuback v. Bakmaz*, 346 Pa. 279, 282 (1943).  "The ultimate test of the existence of a partnership is the intention of the parties to carry on a definite business as co-owners."  *Greene v. Brooks*, 235 Cal. App. 2d 161, 165-66 (1965) (citations omitted).[8]  Accordingly, there can be no implied partnership where "the objective manifestations of intent demonstrate that the parties chose not to bind themselves *until a subsequent agreement is made*" and the subsequent agreement in fact never materializes.  *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 316 (9th Cir. 1996) (emphasis added).

In *Rennick*, the plaintiffs claimed a handshake with the defendant's representatives created a binding oral contract to grant the plaintiffs an exclusive franchise, even though no written agreements were executed.  *Id.* at 313-14.  The parties' interim letter of intent, however, stated "this letter is . . . directed toward the creation of a binding interim agreement" and with "the understanding that this letter of intent is of no binding effect . . . ."  *Id.* at 312-13.  Based on that language, the Court held the parties "intended not to be bound . . . unless and until a subsequent

---

[7] Exhibit 1 attached hereto includes a comparison of the full text of these statutory sections for the Court's convenience.

[8] Pennsylvania law is no different.  *See Leprino Foods Co. v. Gress Poultry, Inc.*, 379 F. Supp. 2d 650, 655 (M.D. Pa. 2005) ("To determine if a partnership exists, there must be 'clear, mutual assent on the part of two or more persons' to form a partnership.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

1   agreement was made" and affirmed dismissal of the plaintiff's claims.  *Id.* at 315-16.

2        Numerous other courts have similarly held.  *See Louis Lesser Enters., Ltd. v.*

3   *Roeder*, 209 Cal. App. 2d 401, 405 (1962) (affirming finding of no partnership or

4   joint venture "where the parties understood that the proposed agreement [was] not

5   complete until reduced to formal writing and signed"); *Pacific Hills Corp. v. Duggan*,

6   199 Cal. App. 2d 806, 814 (1962) (affirming finding of no joint venture where the

7   parties agreed they would enter into a further contract to implement the transaction);

8   *Store Props., Inc. v. Neal*, 72 Cal. App. 2d 112, 116 (1945) ("If parties contemplate

9   a reduction to writing of their agreement before it can be considered complete, there

10  is no contract until the writing is signed."); *Migdal v. Patel*, No. H024684, 2003 WL

11  22422430, at *2, *8 (Cal. App. Oct. 24, 2003) (affirming finding of no joint venture

12  where the parties recorded their intention to form a partnership in a memorandum

13  stating: "[t]his agreement is not intended to be legally binding and shall only be a

14  legal document when executed in a final legal agreement."); *see also Smissaert v.*

15  *Chiodo*, 163 Cal. App. 2d 827, 830-31 (1958) (noting the contract principle that

16  "[w]here . . . there is a manifest intention that the formal agreement is not to be

17  complete until reduced to a formal writing to be executed, there is no binding contract

18  until this is done").[9]

19        Here, too, Defendants made clear to Plaintiff that they "intended not to be

20  bound . . . unless and until a subsequent agreement was made . . . ."  *See Rennick*, 77

21  F.3d at 316.  As Plaintiff admits, Defendants furnished Plaintiff with a Term Sheet

22  in June 2018 expressly providing that:

23        •   "This Term Sheet is *not a commitment* to consummate the Strategic

24            Transaction or otherwise invest in the Company, and is conditioned on the

_____

[9] While these cases were decided on a motion for summary judgment, they were
predicated on the existence of a letter of intent or term sheet, which is undisputed
here based on the allegations and attachment to the Complaint.  *See* Compl. Ex. B.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

completion of due diligence, legal review and documentation that is satisfactory to the Investor."

- "No other legally binding obligations will be created *until definitive agreements are executed* and delivered by all parties."

- "The Strategic Transaction shall be consummated as soon as practicable following the Company's acceptance of this Term Sheet, *negotiation of definitive agreements* and satisfaction of the Conditions to Closing[.]"

*See* Compl. Ex. B, opening paragraphs, ¶ 1 (emphases added).

Given the Term Sheet's clear language expressing an intent *not* to enter into a partnership until definitive agreements were negotiated and executed, Plaintiff is precluded as a matter of law from claiming that an oral partnership arose two months later in August 2018. *See* Compl. ¶ 76. Notably, the Complaint does not explain what happened in August 2018 that allegedly led to the formation of the partnership—Paragraph 76 simply refers to formation "in or around August 2018" without explanation, and the Complaint refers to no other event occurring in August 2018. Plaintiffs do not try to allege, for example, that Defendants somehow waived the Term Sheet's condition that "definitive agreements" must be negotiated and executed. *See* id. Ex. B. To the contrary, Plaintiff admits that "[t]hroughout the summer months of 2018, negotiations between MYC and Defendants were *ongoing*," Compl. ¶ 38 (emphasis added), thus confirming that the Term Sheet's conditions had *not* been met at the time Plaintiff now claims an oral partnership arose.

Because the Term Sheet "demonstrate[s] that the parties chose not to bind themselves until a subsequent agreement is made," *Rennick*, 77 F.3d at 316, and the subsequent agreement was never finalized, Plaintiff's claims based on an implied partnership should all be dismissed with prejudice.

### 3. Plaintiff's Inability to Identify Material Terms of the Alleged Partnership Underscores the Absence of Any Agreement.

Plaintiff's partnership-related claims fail for the additional and related reason

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

that the Complaint fails to allege the necessary terms of the purported partnership. "California law is clear that there is no contract until there has been a meeting of the minds on *all* material points." *Banner Ent., Inc. v. Super. Ct.*, 62 Cal. App. 4th 348, 357-58 (1998). "A contract which leaves an essential element for future agreement of the parties is usually held fatally uncertain and unenforceable." *Okun v. Morton*, 203 Cal. App. 3d 805, 817 (1988). Thus, "[i]f . . . a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998).

*Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199 (2006), illustrates these principles. In *Bustamante*, two parties discussed the possibility of collaborating to market Intuit software in Mexico. *Id.* at 201. A summary email following their negotiation stated, "Our mutual understanding is that we are working together on a deal for Mexico." *Id.* at 204. Nevertheless, the Court of Appeal affirmed the lower court's finding that the purported oral joint venture agreement was vague and unenforceable. *Id.* at 213-14. The court emphasized that material terms remained unsettled, including "the form and amount of Bustamante's compensation; the extent, duration, and nature of his management role, if any; the amount of Intuit's royalty; the equity percentage held by [various parties]; and the liquidity path for both Bustamante and investors." *Id.* at 211. Given the omission of these material terms, the parties had "at best an 'agreement to agree,' which is unenforceable under California law." *Id.* at 213; *see also In re Dimas, LLC*, No. 02-51420-MM, 2007 WL 2127312, at *16-17 (Bankr. N.D. Cal. July 23, 2007) (finding no enforceable joint venture where there was no mutual consent about equity contributions, profit distribution, or cost-sharing); *Kahn Creative Partners, Inc. v. Nth Degree, Inc.*, No. 10-cv-932-JST, 2011 WL 1195680, at *4-5 (C.D. Cal. Mar. 29, 2011) (dismissing claims for breach of oral agreements and breach of the implied covenant of good faith

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

and fair dealing where the parties' purported agreement failed to clarify "the responsibilities of Plaintiff and Defendant vis-à-vis the Conference, or define how each party would be compensated for such work").

Similarly, here, the Complaint fails to identify the necessary terms of the purported partnership. Plaintiff does not describe how partnership profits would be shared—merely alleging that it expected to "share in the profits from increased sales," Compl. ¶ 20—or how costs and losses from the business would be divided. *See Sandberg v. Jacobson*, 253 Cal. App. 2d 663, 668 (1967) ("It is essential . . . to the existence of a partnership that there be a community of interest and an agreement to share jointly in the profits and losses resulting from the enterprise."). Nor does Plaintiff allege who would have managerial control over the business projects or how the partnership as a whole would be managed. *See Bustamante*, 141 Cal. App. 4th at 211 (noting that the "management role" and "management team" remained "unsettled"). Finally, Plaintiff does not allege the duration of the partnership or how withdrawal would work—additional terms needed to enforce an alleged partnership. Without these necessary terms, the Court would have no way to "ascertain the parties' obligations" to determine whether they were breached, *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 623 (1991), and "there is no contract" as a matter of law, *Weddington*, 60 Cal. App. 4th at 811.

### 4. Plaintiff's Fiduciary Duty Claim Fails for Additional Reasons.

In addition to the failed theory of an implied partnership, Plaintiff also premises its fiduciary breach claim on the theory that a "special relationship" arose because "[t]he parties did not deal on equal terms" and Mr. West exerted his "overmastering influence while on the other [side] . . . MYC . . . justifiably reposed trust in him because of [his] status . . . ." Compl. ¶¶ 93-94. This amorphous theory also fails as a matter of law.

As a general matter, "[b]usiness negotiation does not create a fiduciary

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

relationship." *Rennick*, 77 F.3d at 317. A fiduciary duty does not arise when two parties negotiate "to achieve a mutually beneficial arrangement"; a duty arises only where one party "knowingly undertake[s] to act on behalf and *for the benefit of another* . . . ." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008) (emphasis added; internal quotations and citation omitted)*; see also Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*, No. 11-CV-246-IEG, 2011 WL 3703192, at *4 (S.D. Cal. Aug. 23, 2011) (dismissing fiduciary duty claim in part because "the agreement's terms indicate[d] that the parties intended to establish a mutually beneficial relationship" and "nothing in the contract itself suggest[ed defendant] intended to subordinate its interests to Plaintiffs'"); *Comercializadora Recmaq Limitada v. Hollywood Auto Mall, LLC*, No. 12-cv-0945-AJB, 2013 WL 2248140, at *14 (S.D. Cal. May 20, 2013) (dismissing fiduciary duty claim where the complaint "allege[d] nothing more than a contractual, arms-length relationship between the parties"). This rule applies even where "in the course of their business relationships the parties reposed trust and confidence in each other," because that "mere fact . . . does not impose any corresponding fiduciary duty . . . ." *City Solutions, Inc. v. Clear Channel Commc'ns, Inc.*, 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002).

The California Supreme Court has applied these principles in circumstances analogous to those presented here. In *City of Hope*, the plaintiff—a medical center working as an independent contractor for Genentech—argued that Genentech owed a fiduciary duty because the plaintiff had entrusted Genentech with its intellectual property, the parties had asymmetrical access to information, and the medical center was "vulnerable and dependent" in comparison to Genentech. 43 Cal. 4th at 386-88. The court rejected this claim, noting these characteristics are common in many business arrangements and every contract requires one party "to repose an element of trust and confidence in the other to perform." *Id.* at 388-89. Because the case involved "two sophisticated parties" in contractual negotiations, the court held Genentech owed no fiduciary duty because the medical center's alleged

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

"vulnerability" was not "so substantial as to give rise to equitable concerns underlying the protection afforded by the law governing fiduciaries." *Id.* at 389.

Similarly, here, Plaintiff alleges no facts showing that Defendants "knowingly undert[ook] to act on behalf and for [Plaintiff's] benefit . . . ." *See City of Hope*, 43 Cal. 4th at 386. To the contrary, the Complaint confirms the parties were engaged in arm's length negotiations towards the sort of "mutually beneficial" arrangement that bars a finding of a fiduciary duty. *See id.* Plaintiff's conclusory allegation that the parties "did not deal on equal terms" does not change this result. Compl. ¶ 94. As in *City of Hope*, the mere fact that Plaintiff allegedly had unequal bargaining power cannot impose a duty on Defendants to act as a fiduciary for Plaintiff's benefit. *See* 43 Cal. 4th at 389. Indeed, the Complaint belies any suggestion that Plaintiff was some hapless victim needing enhanced legal protections. As alleged, it was Plaintiff that strategically identified the Yeezy brand as a "good match" and affirmatively sought out Mr. West "through mutual connections . . . ." Compl. ¶¶ 14-15. Further, Plaintiff was savvy enough to insist that Defendants sign their form NDA, selecting Pennsylvania, where MYC has its principal place of business, as the governing law. Compl. ¶ 23, *see also id.* at Ex. A § 13. Under these circumstances, there is no plausible suggestion that Plaintiff suffered from the sort of "substantial" "vulnerability" that could give rise to a fiduciary duty, as discussed in *City of Hope. See* 43 Cal. 4th at 389.[10]

## C.    Plaintiff's Promissory Estoppel Claim (Second Claim for Relief) Also Fails as a Matter of Law.

Plaintiff's promissory estoppel claim also fails in light of the Term Sheet's

---

[10] Pennsylvania law is similar and leads to the same result. *See eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 22-23 (Pa. Super. 2002) (explaining that a fiduciary duty does not arise "merely because one party relies on and pays for the specialized skill or expertise of the other party;" instead, there must be "such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel . . . .").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

express requirement of "definitive agreements."   "The elements of promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting estoppel must be injured by the party's reliance." *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 897 (2013) (internal quotations and citations omitted).[11]  The Complaint fails to satisfy these elements for multiple reasons.

First, Plaintiff alleges that Defendants promised to "invest[] $10 million into MYC" and to "creat[e] and run[] Yeezy's e-commerce division in partnership with MYC . . . ." Comp. ¶ 69.  But these alleged "promises" were set out in the Term Sheet in which Defendants expressly cautioned the proposed arrangement would move forward ***only*** if the parties successfully negotiated and executed definitive agreements with the full terms of the proposed partnership.  *Id.* Ex. B, opening paragraph.  This sort of preliminary agreement to negotiate is not the sort of "clear and unambiguous" promise that can support a promissory estoppel claim.  Indeed, multiple courts have rejected such claims on this basis.  *See, e.g.*, *Columbia Pictures Television v. Krypron Broad. of Birmingham, Inc.*, 106 F.3d 284, 291-92 (9th Cir. 1997) (a promise to "work with" the other party is not a clear and unambiguous promise sufficient to state a promissory estoppel claim where, as here, "it clearly contemplate[s] further negotiations to finalize [] terms . . . ."), *rev'd on other grounds by Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998); *Azco Biotech, Inc. v. Qiagen, N.V.*, No. 12-cv-2599-BEN (DHB), 2015 WL 12516024, at *9 (S.D. Cal. July 2, 2015) ("The term sheet, as previously mentioned, was at most an

---

[11] California law applies and the Pennsylvania choice of law provision in the NDA is inapplicable because promissory estoppel is an equitable doctrine that does not apply to promises in an express contract.  *See* note 13 below.  Regardless, the elements of promissory estoppel under Pennsylvania law are materially the same as under California law.  *See Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000) (stating elements of promissory estoppel under Pennsylvania law).

agreement to agree . . . . Plaintiffs cannot satisfy the first element of the promissory estoppel doctrine."); *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1176-79 (2016) (dismissing promissory estoppel claim based on a preliminary "agreement to agree"); *Ehlert v. Am.'s Servicing Co.*, No. 11-CV-1359-JLS (BLM), 2011 WL 4862426, at *4 (S.D. Cal. Oct. 12, 2011) (dismissing promissory estoppel claim because "at most Plaintiffs and Defendant entered into an agreement to agree").

Moreover, because the Term Sheet was at most an "agreement to agree," Plaintiff could not have reasonably relied on it as a definitive promise to invest $10 million and enter into an ongoing partnership. *See Rennick*, 77 F.3d at 317 (finding that "[i]n light of the unequivocal nonbinding language in the letter of intent, reliance on the existence of a contract was unreasonable as a matter of law"); *Phillippe v. Shapell Indus., Inc.*, 43 Cal. 3d 1247, 1262-63 (1987) (holding as a matter of law that it is unreasonable for a plaintiff to rely on a promise he knows to be unenforceable absent a written contract); *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 244 (3d Cir. 2005) (finding that plaintiff could not have reasonably relied on the alleged promise where the parties' prior agreement required further agreements be in writing). Nor could Defendants have reasonably *foreseen* that Plaintiff would rely on the Term Sheet as such. *See Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1185 (1998) (promissory estoppel requires "a promise *which the promisor should reasonably expect* to induce action or forbearance on the part of the promise . . . .") (emphasis added, internal quotations and citations omitted).

Second, Plaintiff claims that Defendant promised to "compensat[e] Plaintiff for its thousands of hours of labor" and "reimburs[e] it for other investments made" in the course of the parties' negotiations. Compl. ¶ 69. But this aspect of Plaintiff's claim also fails in light of the Term Sheet, which specifically stated that

> Company and investor *shall each be responsible for its own expenses* incurred in connection with the negotiation of this Term Sheet and the Definitive Agreements.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

1  *Id.* Ex. B ¶ 13 (emphasis added). Plaintiff's alleged belief that it would be
2  compensated for expenses notwithstanding this written statement to the contrary,
3  Compl. ¶ 71, is unreasonable and cannot support a promissory estoppel claim. *See*
4  *Phillippe*, 43 Cal. 3d at 1262-63 (where a plaintiff "perform[ed] services pursuant to
5  an [unenforceable alleged] agreement," it "suffered no unconscionable injury" and
6  could not seek recovery for the value of the services performed); *Granadino v. Wells*
7  *Fargo Bank, N.A*, 236 Cal. App. 4th 411, 418 (2015) (denying recovery on
8  promissory estoppel claim because a "mere hopeful expectation cannot be equated
9  with the necessary justifiable reliance") (internal quotations and citations omitted).
10     Third, Plaintiff refers to various other "promises" that were allegedly made
11  during the parties' negotiations—for example, "Mr. West's promise of even more
12  economic reward in the future . . . ." Compl. ¶¶ 31-32, 39-40, 69. But these vague
13  allegations do not state a viable promissory estoppel claim, which requires a promise
14  that is "clear and unambiguous in its terms," *Jolley*, 213 Cal. App. 4th at 897, and
15  "definite enough that a court can determine the scope of the duty, and the limits of
16  performance . . . ." *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1045
17  (2010).[12] Plaintiff's allegations that it expected to receive various unspecified future
18  benefits from working with Defendants falls far short of these requirements.[13]
19     For these reasons, Plaintiff's promissory estoppel claim should be dismissed
20  with prejudice.

---

[12] Pennsylvania is similar. To be enforceable, the promise must expressly "indicate
with 'reasonable certainty' the intent of the parties." *Burton Imaging Grp. v. Toys
"R" Us, Inc.*, 502 F. Supp. 2d 434, 439 (E.D. Pa. 2007).

[13] Plaintiff's promissory estoppel claim also fails to the extent it relies on an alleged
breach of the NDA, Compl. ¶ 71, because "[t]he doctrine of promissory estoppel is
inapplicable to enforce the bargained for consideration of a contract." *J.B. Enters.
Int'l v. Sid & Marty Kroft Pictures Corp.*, No. CV 02-7779 CBM (SHX), 2003 WL
21037837, at *4 (C.D. Cal. Mar. 3, 2003).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
20
DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC

**D.    Plaintiff's Claims for Quantum Meruit and Unjust Enrichment Also Fail Because They are Contradicted by the Term Sheet.**

Like its promissory estoppel claim, Plaintiff bases its unjust enrichment and quantum meruit claims on its purported reliance on Defendant's alleged promises to compensate Plaintiff for its labor and for expenses incurred in connection with the transaction proposed in the Term Sheet.  Compl. ¶¶ 101, 105.  But "the fact that a [defendant] does not pay for the [plaintiff's] services under an *unenforceable* [] contract does not constitute" unjust enrichment or quantum meruit.  *Phillippe*, 43 Cal. 3d at 1263-64.  Plaintiff is not entitled to compensation under these theories for expenses it voluntarily incurred in the hope of consummating an agreement that it knew was contingent on "definitive agreements." *Id.* Ex. B, opening paragraphs.

Further, Plaintiff's unjust enrichment claim fails for the additional reason that California does not recognize unjust enrichment as an independent cause of action at all.  *Azco*, 2015 WL 12516024, at *9 (dismissing unjust enrichment claim and declining to "address arguments for a claim that California does not recognize"); *see also Valenziano v. Orchard Enters., Inc.*, No. 10-cv-9754-JFW, 2011 WL 13217770, at *3 (C.D. Cal. Jan. 18, 2011) (Walter, J.) (recognizing the same).

**V.    CONCLUSION**

For the reasons set forth above, Defendants respectfully ask that this Court dismiss Plaintiff's Complaint in its entirety, and with prejudice, as a matter of law.

Dated:  November 9, 2020

COOLEY LLP
MICHAEL G. RHODES
WHITTY SOMVICHIAN
DANIELLE PIERRE
DARINA SHTRAKHMAN


By: */s/ Michael G. Rhodes*
Michael G. Rhodes

Attorneys for Defendants
Kanye Omari West and Yeezy Apparel LLC

236932110

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
2:20-CV-07732-JFW-JC**

# EXHIBIT 1

| Partnership Statutory Sections | |
|---|---|
| **Pennsylvania Statute Cited by Plaintiff** | **Corresponding California Statute** |
| 15 P.C.S.A. § 8422(a)<br>"General rule.--Except as provided in subsection (b), the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." | Cal. Corp. Code § 16202(a)<br>"Except as otherwise provided in subdivision (b), the association of two or more persons to carry on as coowners a business for profit forms a partnership, whether or not the persons intend to form a partnership." |
| 15 P.C.S.A. § 8447(b)[1]<br>"Duty of loyalty.--The fiduciary duty of loyalty of a partner includes the duties:<br>    (1) to account to the partnership and hold as trustee for it any property, profit or benefit derived by the partner:<br>        (i) in the conduct or winding up of the partnership's business;<br>        (ii) from a use by the partner of the partnership's property; or<br>        (iii) from the appropriation of a partnership opportunity;<br>    (2) to refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a person having an interest adverse to the partnership; and<br>    (3) to refrain from competing with the partnership in the conduct of the partnership's | Cal. Corp. Code § 16404(b)<br>"A partner's duty of loyalty to the partnership and the other partners includes all of the following:<br>    (1) To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity.<br>    (2) To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership.<br>    (3) To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership." |

[1] While the third claim's heading and citations refer to 15 P.C.S.A. § 8447(c), which pertains to the duty of care, the allegations quote § 8447(b). *See* Compl. ¶ 79.

| | |
|---|---|
| business before the dissolution of the partnership." | |
| <u>15 P.C.S.A. § 8447(d)</u><br>"Good faith and fair dealing.--A partner shall discharge the duties and obligations under this title or under the partnership agreement and exercise any rights consistent with the contractual obligation of good faith and fair dealing." | <u>Cal. Corp. Code § 16404(d)</u><br>"A partner shall discharge the duties to the partnership and the other partners under this chapter or under the partnership agreement and exercise any rights consistently with the obligation of good faith and fair dealing." |
| <u>15 P.C.S.A. § 8415(c)(11)</u><br>"Limitations.--A partnership agreement may not do any of the following: . . . Vary the contractual obligation of good faith and fair dealing under section 8447(d), except as provided under subsection (d)." | <u>Cal. Corp. Code § 16103(b)(5)</u><br>"The partnership agreement may not do any of the following: . . . Eliminate the obligation of good faith and fair dealing under subdivision (d) of Section 16404, but the partnership agreement may prescribe the standards by which the performance of the obligation is to be measured, if the standards are not manifestly unreasonable." |