**GERAGOS & GERAGOS**
A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone (213) 625-3900
Facsimile (213) 232-3255
Geragos@Geragos.com

**ZUMPANO PATRICIOS & POPOK, PLLC**
MICHAEL S. POPOK
mpopok@zplaw.com
(Admitted *pro hac vice*)
417 Fifth Avenue, Suite 826
New York, New York 10016
Telephone: (212) 381-9999
Facsimile: (212) 320-0332

*Attorneys for Plaintiff,* MyChannel, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MYCHANNEL, INC.,** a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>**KANYE OMARI WEST,** Individually, and **YEEZY APPAREL LLC**, a California limited liability company,<br><br>                    Defendants. | Case No.: 2:20-cv-07732-JFW-JC<br><br>**PLAINTIFF'S AMENDED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1

**TABLE OF CONTENTS**

2

3      **I. PRELIMINARY STATEMENT** ..........................................................1

4      **II. RELEVANT ALLEGATIONS** ........................................................2

5      **III. LEGAL STANDARD** ....................................................................5

6      **IV. ARGUMENT** ..................................................................................5

7          A. The Unsigned Term Sheet Does not bar any of Plaintiff's Claims................5

8          B. Plaintiff Properly Stated a Claim for Breach of the NDA (First Claim) .........9

9              1. Plaintiff Sufficiently Pled What Defendants Misappropriated..............10

10             2. The NDA Does not Contain a Condition Precedent ............................11

11         C. The Complaint Properly Alleges its Claims for: (1) Fiduciary Duty of

12         Loyalty Breach (Third Claim); (2) Good Faith and Fair Dealing Breach

13         (Fourth Claim); and, (3) Breach of Fiduciary Duties (Fifth Claim) .................12

14             1. Plaintiff Adequately Identifies the Material Terms of the Parties'

15             Partnership..............................................................................................13

16             2. Plaintiff has Properly Pled its Fiduciary Duty Claim (Fifth Claim)

17             Against Defendant West .........................................................................15

18         D. The Complaint Properly Pleads a Claim for Promissory Estoppel (Second

19         Claim)......................................................................................................17

20         E. Plaintiff has Properly Pled Claims for Unjust Enrichment (Sixth Claim) and

21         *Quantum Meruit* (Seventh Claim)................................................21

22     **V. CONCLUSION** ............................................................................22

23

24

25

26

27

28

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

# TABLE OF AUTHORITIES

**Cases**

*Alvarado Orthopedic Research, L.P. v. Linvatec Corp.,*
No. 11-CV-246-IEG (RBB), 2011 WL 3703192, 21 U.S. Dist. LEXIS 94142
(S.D. Cal. Aug. 23, 2011) ...............................................................................16

*Am. Gen. Life Ins. Co. v. Zinszer*,
No. CV 10-5876 SVW (RZx), 2010 U.S. Dist. LEXIS 157124 (C.D. Cal. Dec.
6, 2010)..........................................................................................................7, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................5

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ..........................................................................21

*Azco Biotech, Inc. v. Qiagen, N.V.*,
No. 12-cv-2599-BEN (DHB), 2015 WL 12516024
(S.D. Cal. July 2, 2015) ..........................................................................18-19, 21

Order, *Azco Biotech, Inc. v. Qiagen, N.V.*,
No. 12-CV-2599-BEN (DHB), 2013 U.S. Dist. LEXIS 119118
(S.D. Cal. Aug. 19, 2013) ...............................................................................19

*Bobulinski v. Roseman*,
No. CV 19-2963-MWF (SSx), 2019 U.S. Dist. LEXIS 231693
(C.D. Cal. Nov. 25, 2019) ..................................................................................7

*Bustamante v. Intuit, Inc.*,
141 Cal. App. 4th 199 (2006)..........................................................................14

*Choi v. 8th Bridge Capital, Inc.*,
No. 2:17-cv-08958-CAS(AFMx),  2020 U.S. Dist. LEXIS 51878
(C.D. Cal. Mar. 25, 2020) ........................................................................6, 8, 15

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
43 Cal. 4th 375 (2008) ............................................................................... 17-18

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

*Cogenra Solar, Inc. v. SolarCity Corp.*,

    No. 16-cv-05481-VC, 2017 U.S. Dist. LEXIS 130863

    (N.D. Cal. Aug. 16, 2017)........................................................................ 18-19

*Comercializadora Recmaq Limitada v. Hollywood Auto Mall, LLC*,

    No. 12cv0945 AJB (MDD), 2013 WL 2248140, 2013 U.S. Dist. LEXIS 71292

    (S.D. Cal. May 20, 2013) ...............................................................................17

*Daniels v. Select Portfolio Servicing, Inc.*,

    246 Cal. App. 4th 1151 (2016) .....................................................................19

*Dimas, LLC v. Inv. Grade Loans (In re Dimas, LLC)*,

    No. 02-51420-MM, 2007 Bankr. LEXIS 2516

    (Bankr. N.D. Cal. July 23, 2007).................................................................14

*Earhart v. William Low Co.*,

    25 Cal. 3d 503 (1979) ....................................................................................6

*Ehlert v. Am.'s Servicing Co.*,

    No. 11CV1359 JLS (BLM), 2011 WL 4862426, 2011 U.S. Dist. LEXIS 118072

    (S.D. Cal. Oct. 12, 2011)..............................................................................19

*Erickson v. Pardus*,

    551 U.S. 89 (2007)..........................................................................................5

*Ersa Grae Corp. v. Fluor Corp.*,

    1 Cal. App. 4th 613 (1991).............................................................................14

*ESG Capital Partners, LP v. Stratos*,

    828 F.3d 1023 (9th Cir. 2016)......................................................................21

*Galindo v. City of San Mateo*,

    No. 16-cv-03651-EMC, 2016 U.S. Dist. LEXIS 169630

    (C.D. Cal. Dec. 7, 2016) ..............................................................................22

*Garcia v. World Savings, FSB*,

    183 Cal. App. 4th 1031 (2010)......................................................................20

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

iv

*Granadino v. Wells Fargo Bank, N.A.*,

    236 Cal. App. 4th 411 (2015)..................................................................19

*Holmes v. Lerner*,

    74 Cal. App. 4th 442 (1999)..................................................................15

*J.B. Enters. Int'l v. Sid & Marty Kroft Pictures Corp.*,

    No. CV 02-7779 CBM (SHx), 2003 WL 21037837,

    2003 U.S. Dist. LEXIS 7668 (C.D. Cal. Mar. 3, 2003) .....................18

*Jackson v. Ramos*, No. CV 19-2288-JFW(E),

    2019 U.S. Dist. LEXIS 226989 (C.D. Cal. Nov. 8, 2019) ..................5

*Kahn Creative P'ships, Inc. v. Nth Degree, Inc.*, No. CV 10-932-JST (FFMx),

    2011 U.S. Dist. LEXIS 34248 (C.D. Cal. Mar. 29, 2011)...................14

*Khoja v. Orexigen Therapeutics, Inc.*,

    899 F.3d 988 (9th Cir. 2018)...........................................................2, 16

*Knit With v. Knitting Fever, Inc.*,

    742 F. Supp. 2d 568 (E.D. Pa. 2010) ...............................................13

*Louis Lesser Enters., Ltd. v. Roeder*,

    209 Cal. App. 2d 401 (1962).................................................................7

*Lucas v. IBM*, No. 20-cv-00141-JCS,

    2020 U.S. Dist. LEXIS 86086 (N.D. Cal. May 14, 2020)...................7

*M.H. Eby, Inc. v. Timpte Indus.*, No. 19-386,

    2019 U.S. Dist. LEXIS 125086 (E.D. Pa. July 26, 2019) .................10

*McKeon v. Giusto*,

    44 Cal. 2d 152 (1955) ........................................................................13

*Migdal v. Patel*, No. H024684,

    2003 WL 22422430, 2003 Cal. App. Unpub. LEXIS 9967

    (Oct. 24, 2003)......................................................................................8

*Moncada v. West Coast Quartz Corp.*,

    221 Cal. App. 4th 768 (2013)..............................................................20

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO., NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

*Moreno v. SFX Entm't*, No. CV-14-880-RSWL-CWx,

    2015 U.S. Dist. LEXIS 99564 (C.D. Cal. July 29, 2015) ....................................6

*Okun v. Morton*,

    203 Cal. App. 3d 805 (1988)................................................................................14

*Onza Partners SL v. Sony Pictures Entm't*, No. CV 16-07269-SVW-FFM,

    2017 U.S. Dist. LEXIS 228403 (C.D. Cal. Feb. 15, 2017) ...............................6

*Pacific Hills Corp. v. Duggan*,

    199 Cal. App. 2d 806 (1962)..................................................................................7

*Rennick v. O.P.T.I.O.N Care, Inc.*,

    77 F.3d 309 (9th Cir. 1996)....................................................................7, 13, 17

*Sandberg v. Jacobson*,

    253 Cal. App. 2d 663 (1967)................................................................................14

*Second Measure, Inc. v. Kim*,

    143 F. Supp. 3d 961 (N.D. Cal 2015)........................................................... 12-14

*Sizemore v. Hotwire Communs., LLC*, No. 14-5543,

    2015 U.S. Dist. LEXIS 64389 (E.D. Pa. May 18, 2015)...................................11

*Smissaert v. Chiodo*,

    163 Cal. App. 2d 827 (1958)..................................................................................8

*SSC Manager, LLC v. Venezia FC 1907 LP*, No. 17-1042,

    2017 U.S. Dist. LEXIS 118294 (E.D. Pa. July 27, 2017) ...............................6, 8

*Store Props., Inc. v. Neal*,

    72 Cal. App. 2d 112 (1945)....................................................................................7

*Swafford v. IBM*,

    383 F. Supp. 3d 916 (N.D. Cal. 2019)................................................................22

*Transp. Int'l Pool, Inc. v. Ross Stores, Inc.*, No. 06-1812,

    2009 U.S. Dist. LEXIS 32424 (E.D. Pa. April 15, 2009) ................................10

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

*Treefrog Devs., Inc. v. Seidio, Inc.*, No. 13cv0158-IEG (KSC),
   2013 WL 4028096, 2013 U.S. Dist. LEXIS 110760
   (S.D. Cal. Aug. 6, 2013) ...........................................................15-16, 18, 20-21

*Udodi v. Stern*,
   438 F. Supp. 3d 293 (E.D. Pa. 2020).................................................................9

*United States ex rel. Ling v. City of L.A.*, No. CV 11-974 PSG (JCx),
   2018 U.S. Dist. LEXIS 136589105 (C.D. Cal. July 25, 2018)........................19

*Valenziano v. Orchard Enters., Inc.*, No. CV 10-9754-JFW (PLAx),
   2011 WL 13217770 (C.D. Cal. Jan. 18, 2011) ................................................21

*Weddington Productions, Inc. v. Flick*,
   60 Cal. App. 4th 793 (1998)...........................................................................14

*Wilcox v. EMC Mortgage Corp.*, No. SACV 10-1923 DOC (JCGx),
   2011 WL 10065501, 2011 U.S. Dist. LEXIS 82128 (C.D. Cal. July 25,
   2011) .............................................................................................................21

*Yeiser Research & Dev. LLC v. Teknor Apex Co.*,
   281 F. Supp. 3d 1021 (S.D. Cal. 2017) ...........................................................11

*Zucco Partners, LLC v. Digimatic Corp.*, 552 F.3d 981 (9th Cir. 2009).......................5

**Statutes and Rules**

15 Pa. Cons. Stat. § 8447(b) .......................................................................................17

Cal. Corp. Code § 16404(a) ................................................................................. 16-17

Fed. R. Civ. P. 12(b)(6)............................................................................... *passim*

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

## I.    **PRELIMINARY STATEMENT**

Defendants Kanye West ("West") and Yeezy Apparel, LLC ("Yeezy")'s motion to dismiss ("Motion"), scant on analysis and comprised primarily of inapposite case law (applying summary judgment or trial/appellate standards) and illogical arguments premised almost solely on an unsigned "term sheet," is exactly the type of Rule 12(b)(6) motion that courts reject.  It wastes scarce judicial resources on matters that are at best affirmative defenses to be raised in an answer or addressed after the development of a full record.  What the Motion does <u>not</u> provide the Court with is proper grounds to dismiss the Complaint ("Cplt.") (Dkt. No. 1) at the pleading stage because each of Plaintiff MyChannel, Inc.'s ("Plaintiff") seven (7) claims are well-pled and contain the essential elements.

Except for the Non-Disclosure Agreement ("NDA") claim, Defendants' entire fanciful argument in favor of dismissal rests on the "fact" that the parties, in the course of their business dealings, entertained but did not sign a term sheet.  Without any case law in support, Defendants take a breathtaking leap of logic to argue that the very existence of the term sheet as a matter of law bars Plaintiff from stating claims based on promissory estoppel, breaches of fiduciary duty, and *quantum meruit*/unjust enrichment.  This is not the law in this jurisdiction, and the Court should deny the Motion.

To answer the question posed by Defendants in the very first line of their brief: The Complaint properly alleges the existence of a business relationship and collaboration between Plaintiff and Defendants – not an agreement to agree, not a conjectural or speculative negotiating session, not unexecuted contracts, but an actual business venture.  Further the Complaint alleges a series of actionable promises made by Defendants upon which Plaintiff reasonably relied, and the creation of a fiduciary relationship between Defendants and Plaintiff that Defendants subsequently breached.  As alleged in great detail in the 107-paragraph Complaint, Plaintiff, a cutting-edge video capture and e-commerce company and its principals, went into business with

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Defendants West and Yeezy to provide the electronic and video-capture infrastructure for Defendants' lucrative e-commerce business. Specifically, MyChannel relocated its principals to Yeezy's headquarters and worked full-time, tirelessly and around the clock at Defendants' urging, *for six months straight*, devoting more than 10,000 hours of time (and hundreds of thousands of dollars in costs and lost opportunity costs) to incorporate MyChannel's proprietary Video Platform (the "MyChannel Video Platform") into Defendants' e-commerce business. Throughout the business relationship, Defendant West "bear hugged" Plaintiff, drawing its principals close. At the same time, West told his inner circle, corporate sponsors, brand collaborators like *adidas* and anyone else who would listen that he was in business with MyChannel (whom he referred to as "Our Channel" and renamed "YZY Tech") to announce their venture to the world.

But Defendant West, being, well, Defendant West, turned around and ended the business relationship in a huff, retained the benefits of all of Plaintiffs' hard work for himself, and stole its MyChannel Video Platform technology to use in his e-commerce business without compensation. The facts, as alleged in the Complaint, give rise to quasi-contractual and equitable claims (promissory estoppel, *quantum meruit* and unjust enrichment), and those sounding in fiduciary duty breach, and the Court should deny the Motion.

## II.   RELEVANT ALLEGATIONS[1]

What Defendants desperately want this case to be about, based on their frequent incantation, is the unsigned "term sheet" to then argue that its mere existence bars all other claims at the pleading stage. But, as even they have to concede in their briefing, Plaintiff is <u>not</u> suing for breach of the unsigned term sheet, and that apparently has driven Defendants (and counsel by extension) up the proverbial wall. Instead, the only references in the Complaint to the "term sheet" (Cplt. ¶¶ 30 and 31) are part of a narrative to explain how Defendants used that "term sheet" as a carrot to induce Plaintiff

---

[1]   Defendants' frequent inclusion of purported "facts" outside the four corners of the Complaint should be ignored. *See* Fed. R. Civ. P. 12(b)(6); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

to continue to work on and invest their energies and monies full-time in Defendants' e-commerce business for six (6) straight months. *Compare* Defendants' Brief (Dkt. No. 31) ("Defs. Br.") at p. 5, *with* Cplt. ¶¶ 21-22, 34-36 and 46.[2]

Despite Defendants' protestations to the contrary, the Complaint alleges that a business relationship, including an oral partnership and a quasi-contractual relationship, arose between the parties as a result of their course of dealing, as demonstrated by Defendants' statements and conduct over the course of their six-month relationship. *See* Cplt. pp. 3, 5, ¶¶ 18-50. Specifically, the parties' business relationship, to have Plaintiff's proprietary MyChannel Video Platform serve as the engine and backbone for Defendants' e-commerce business, began in April 2018 when Defendant West exclaimed, "I love it, let's do this," (referring to going into business with Plaintiff) after the parties' initial meeting. *Id.* ¶ 18. Soon thereafter, and at West's request, Plaintiff relocated its business operations full-time to Calabasas, California and then to Chicago, Illinois, to "work exclusively and around the clock . . . to integrate the MYC Video Platform into Yeezy's existing e-commerce business." *Id.* ¶ 19. Plaintiff did this because "Mr. West and other senior leadership in his organization promised that . . . MYC would be handsomely rewarded." *Id.* ¶ 20. Around the same time, in order to protect its proprietary technology, Plaintiff required Defendants to execute an NDA. *Id.* ¶ 23 and at Ex. A thereto. From this point forward, and non-stop for the next six (6) months, the Complaint alleges that the parties continued to nurture their partnership and worked to: "(a) increase Yeezy's site traffic; (b) increase Yeezy's conversion ratio (*i.e.*, customer buys); and (c) enhance Yeezy's customer/viewer experience by improving site functionality." *Id.* ¶ 27.

Two to three months <u>after</u> the initial presentation and after Plaintiff had already spent months working with Defendants, the unsigned "term sheet" that Defendants have fallen in love with arose. Cplt. ¶ 30. As alleged in the Complaint, in order to entice

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

---

[2] For the Court's convenience, Plaintiff has annexed hereto a chart that compares Defendants' mischaracterizations to the Complaint's actual allegations. *See* Exhibit "**A**."

Plaintiff to continue to devote its time, energy, money and resources to the partnership, Defendants sent Plaintiff an unsigned "term sheet" in June 2018. *Id.* ¶¶ 28-30. "It is this Term Sheet, coupled with Mr. West's promise of even more economic reward in the future, that understandably encouraged MYC and its founders to go 'all in' and devote all of their time and resources to the partnership." *Id.* ¶ 31.

In reliance on Defendants' promises, *both prior to and after Defendants sent the unsigned "term sheet"* to Plaintiff, Plaintiff devoted the time of "almost a dozen programmers and product developers" and its key executives and advisors, working up to 80-hour weeks non-stop for six months to make the partnership – the "business relationship" in the defense's parlance – a success. *See Id.* ¶¶ 33-34. Plaintiff worked solely for Defendants and "logged about 10,000 hours" in the process. *Id.* ¶ 34. Throughout their commercial relationship, Defendants "continuously encouraged MYC to do more and better in return for making the partnership an economic success." *Id.* ¶ 35. Mr. West brought Plaintiff's executives to meetings with *adidas* and Salesforce and even invited one of Plaintiff's founders to travel with him to Africa in October 2018. *Id.* ¶¶ 36-42.

Around this time, Defendant West, being enthusiastic and supportive of the parties' business relationship and the anticipated transformation of his e-commerce business, began to refer to Plaintiff as "Our Channel" instead of "MyChannel." *Id.* ¶ 43. Plaintiff never thought that Defendants' overt support for Plaintiff's technology as part of their shared venture would lead to Defendants misappropriating that technology, leaving Plaintiff in the dust. *Id.*

The Complaint further alleges that after six (6) months of hard, successful and uncompensated work, Plaintiff was shocked to learn in early 2019 that Defendants had launched a successful e-commerce program and platform – *Sunday Service* – using Plaintiff's proprietary technology in violation of the parties' NDA. *Id.* ¶¶ 51-55 and at Ex. A thereto. Even Mr. West's "closest confidants and business advisors" recognized that *Sunday Service* ripped off Plaintiff's technology. *Id.* ¶ 53.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

III.   **LEGAL STANDARD**

As the Court knows well, in response to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it "must accept as true all of the factual allegations contained in the complaint." *Jackson v. Ramos*, No. CV 19-2288-JFW(E), 2019 U.S. Dist. LEXIS 226989, at *10-11 (C.D. Cal. Nov. 8, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see also* *Zucco Partners, LLC v. Digimatic Corp.*, 552 F.3d 981, 989 (9th Cir. 2009) (on a motion to dismiss, the court takes as true all non-conclusory factual allegations in the complaint and construes the complaint in the light most favorable to the plaintiff). The Complaint need only contain sufficient factual allegations that, when accepted as true, state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Jackson*, 2019 U.S. Dist. LEXIS 226989, at *10 (C.D. Cal. Nov. 8, 2019) (quoting *Ashcroft*, 556 U.S. at 678) (internal citations omitted). The Complaint here meets all of these tests and should not be dismissed.

IV.   **ARGUMENT**[3]

A.   **The Unsigned Term Sheet Does not bar any of Plaintiff's Claims**.

The *sine qua non* of Defendants' Motion is the existence of the unexecuted "term sheet" that arose several months after the parties began their business relationship. To hear Defendants tell it, it is this term sheet that Defendants argue somehow bars as a matter of law all of the quasi-contractual, equitable and legal claims in the Complaint, save for the First Claim for Relief based on the signed NDA. But once that lynchpin is pulled as detailed herein, the rest of the arguments in favor of dismissal of the Complaint

---

[3]   To assist the Court, Plaintiff adopts Defendants' "structure" for its briefing, addressing the pleading adequacy of the First Claim for Relief under the NDA; then the Third, Fourth and Fifth Claims for Relief related to the fiduciary claims; before returning to the Second Claim for Relief (Promissory Estoppel), and then the Sixth (Unjust Enrichment) and Seventh (*Quantum Meruit*) Claims. But since the basis for virtually all of Defendants' pleas for dismissal save for the First Claim (NDA) is the unsigned "term sheet," we will address and refute it at the outset.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

fall.  *See Onza Partners SL v. Sony Pictures Entm't*, No. CV 16-07269-SVW-FFM, 2017 U.S. Dist. LEXIS 228403, at *10 (C.D. Cal. Feb. 15, 2017) (denying a motion seeking the dismissal of a breach of implied-in-fact contract claim premised on a concept disclosed during negotiations that later failed to result in an executed agreement); *Moreno v. SFX Entm't*, No. CV-14-880-RSWL-CWx, 2015 U.S. Dist. LEXIS 99564, at *8-14 (C.D. Cal. July 29, 2015) (communications and conduct of parties sufficient to create question of fact as to claims for fiduciary duty, promissory estoppel and implied partnership in response to motion for summary judgment); *Earhart v. William Low Co.*, 25 Cal. 3d 503 (1979) (allowing recovery under *quantum meruit* where parties negotiated about, but never formally entered into, a contract).

Defendants' obsession with the unsigned "term sheet" does not carry the day on a motion to dismiss.  *See SSC Manager, LLC v. Venezia FC 1907 LP*, No. 17-1042, 2017 U.S. Dist. LEXIS 118294, at *25-26 (E.D. Pa. July 27, 2017) (declining to dismiss a promissory estoppel claim based on an unsigned term sheet); *Choi v. 8th Bridge Capital, Inc.*, No. 2:17-cv-08958-CAS(AFMx), 2020 U.S. Dist. LEXIS 51878, at *11-12 and *27-28 (C.D. Cal. Mar. 25, 2020) (denying a motion for summary judgment based on the existence of an unsigned "Draft Term Sheet" because its existence "does not foreclose the possibility that the parties reached an agreement").[4]  Defendants claim that the unsigned "term sheet" demonstrates the parties' objective manifestation not to bind themselves "until a subsequent agreement is made." Defs. Br. at p. 11.  However, Defendants' position is irrelevant to the Court's analysis as to whether the Plaintiff has properly pled its claims: The "term sheet" was never executed and was sent by Defendants to Plaintiff months <u>after</u> the partnership came into existence and after Plaintiff had already performed substantial work.  *See* Cplt. ¶¶ 19-29 and at Ex. B thereto.

---

[4]    Defendants spend a considerable amount of time discussing the choice of law.  As alleged in the Complaint, the NDA is governed by Pennsylvania law (*see* Cplt. ¶ 7); and Plaintiff is a Pennsylvania resident, and injuries to it occurred there (*see id.* ¶¶ 1 and 7). But whether Pennsylvania or California substantive law applies is of no moment.  Defendants' Motion fails under the application of either.

Further, the issues of whether the parties' objective manifestations were to not bind themselves "until a subsequent agreement is made," or if Plaintiff reasonably relied on Defendants' promises and conduct, "is a highly fact-intensive inquiry" that is not proper grounds for a Rule 12(b)(6) motion to dismiss. *Am. Gen. Life Ins. Co. v. Zinszer, No. CV 10-5876 SVW (RZx), 2010 U.S. Dist. LEXIS 157124, at \*16 (C.D. Cal. Dec. 6, 2010)*; *see Bobulinski v. Roseman, No. CV 19-2963-MWF (SSx), 2019 U.S. Dist. LEXIS 231693, at \*19 (C.D. Cal. Nov. 25, 2019)*; *Lucas v. IBM, No. 20-cv-00141-JCS, 2020 U.S. Dist. LEXIS 86086, at \*25 (N.D. Cal. May 14, 2020)* (holding reasonable reliance "is a question of a fact inappropriate for resolution on the pleadings").

More damning to Defendants' position is the utter paucity of supporting case law for their novel theory. It should come as no surprise that not one of the cases cited in their brief stands for the proposition that the existence of an unsigned term sheet arising at some point in the parties' discussions precludes other independent equitable and legal claims permitting their dismissal on a 12(b)(6) motion (likely because this is not the law).

Defendants' cases (mainly California state law cases, not decided under Rule 12(b)(6)), contain two (2) fatal flaws – (*1) each involved the existence of fully-executed agreements between the parties; and/or (2) each was decided using a summary judgment, trial or post-trial standard.* In short, not one of the cases cited involved a trial court's dismissal of claims in response to a 12(b)(6) motion because of the existence of an unsigned term sheet or the like. *See Rennick v. O.P.T.I.O.N Care, Inc., 77 F.3d 309, 315-16 (9th Cir. 1996)* (motion for *summary judgment* concerning a *fully-executed* letter of intent); *Louis Lesser Enters., Ltd. v. Roeder, 209 Cal. App. 2d 401, 405 (1962)* (because interim letter of intent was *fully-executed*, the court found no partnership existed *at trial*); *Pacific Hills Corp. v. Duggan, 199 Cal. App. 2d 806, 814 (1962)* (defendant's *appeal* based on enforceability of *fully-executed contract*); *Store Props., Inc. v. Neal, 72 Cal. App. 2d 112, 116 (1945)* (*executed* lease proposal that required a subsequent writing did not comply with statute of frauds and was

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

unenforceable); *Migdal v. Patel*, No. H024684, 2003 WL 22422430, 2003 Cal. App. Unpub. LEXIS 9967, at *2, *8 (Oct. 24, 2003) (*appeal* held that *fully-executed* memorandum not legally binding); *Smissaert v. Chiodo*, 163 Cal. App. 2d 827, 830-31 (1958) (*appeal* based on enforceability of *fully-executed contract*).

Defendants also ignore contrary law including one from this jurisdiction – Judge Snyder's decision just seven (7) months ago in *Choi, 2020 U.S. Dist. LEXIS 51878, at *11-12 and *27-28* – and the Eastern District of Pennsylvania's decision in *SSC Manager*. In *Choi*, the parties executed a joint NDA and began to negotiate the terms of a written partnership agreement that would source foreign investors for hotel real estate projects. *Id. at *8*. The parties negotiated a term sheet about the future partnership, but it was never signed. *Id. at *13*. Judge Snyder held on summary judgment that a "purported failure to sign the Draft Term Sheet does not foreclose the possibility that the parties reached an [independent] agreement." *Choi*, 2020 U.S. Dist. LEXIS 51878, at *27. If virtually the same argument raised by the *Choi* defendants, as raised by Defendants here, was insufficient to prevail on a motion for summary judgment, then using it as the basis of a 12(b)(6) motion should be unavailing.

In *SSC Manager*, plaintiff filed a declaratory judgment action asking the trial court to order that it neither entered into an agreement with nor had any obligations to defendant arising out of a series of negotiation sessions and a resulting unexecuted term sheet. *SSC Manager*, U.S. Dist. LEXIS 118294, at *5. Plaintiff moved to dismiss under Rule 12(b)(6) the defendant's counterclaims sounding in fraud, negligent misrepresentation, aiding and abetting, and promissory estoppel by arguing, like Defendants here, that an unsigned term sheet barred the claims at the pleading stage. *Id. at *23-26*. But the trial court rejected the premise that an unsigned term sheet is dispositive of other claims at the 12(b)(6) motion stage, finding that "the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury" and is not properly considered on a motion to dismiss. *Id. at *28*.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Here, Plaintiff's Complaint contains no less than 15 paragraphs of detail concerning the alleged conduct of Defendants West and Yeezy, including their promises and representations to Plaintiff that form the basis of each and every claim, and the timing and use of the "term sheet" by Defendants in the course of their commercial dealings with Plaintiff.  *See* Cplt. ¶¶ 19-29 and 33-36.  In fact, as alleged and as must be assumed to be true at this stage, Defendants did not send the unsigned "term sheet" until June 2018, approximately two months <u>after</u> Plaintiff began working exclusively for Defendants and after Plaintiff had already relocated to California to work on the parties' venture.  *See* Cplt. ¶¶ 19-29.

## B.     <u>Plaintiff Properly Stated a Claim for Breach of the NDA (First Claim)</u>.

For Plaintiff's First Claim for Relief (breach of the parties' NDA), Defendants cannot use the talisman of the "term sheet," and instead are left with arguing that Plaintiff has not pled: (1) the specific proprietary information Defendants misappropriated; (2) that Defendants had the "opportunity" to actually misappropriate that technology; and (3) that Plaintiff has complied with a purported condition precedent to alleging breach.  Defs. Br. at pp. 7-9.  But a review of the Complaint demonstrates that it does properly allege the "what" – the specific proprietary information misappropriated, *i.e.*, the MyChannel Video Platform for its e-commerce business, and the "how" – the opportunity that Defendants exploited to misappropriate it.  *See* Cplt. ¶ 66.  Further, Defendants' argument that the Complaint should be dismissed at the pleading stage for failure to allege compliance with a condition precedent relevant to the breach alleged is based on an incorrect reading of the NDA and its subparts as discussed in Section IV.B.2 below.  *See Id.* ¶¶ 56, 66 and at Ex. A., § 1(a)-(b)).

It cannot be reasonably challenged by the defense that Plaintiff properly alleged that Defendants breached the NDA under the required Pennsylvania law by including the allegations that there was a written NDA contract (and attaching it) (*see* Cplt. ¶¶ 23, 59-64); that the contract was breached (*see id.* at pp. 4-5, ¶¶ 52-56 and 66), and that Plaintiff was damaged as a result (*id.* ¶¶ 56-57 and 67).  *See generally <u>Udodi v.</u>*

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

9

*Stern*, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020).  *See also Transp. Int'l Pool, Inc. v. Ross Stores, Inc.*, No. 06-1812, 2009 U.S. Dist. LEXIS 32424, at *9 (E.D. Pa. Apr. 15, 2009).  That is all that is required at the pleading stage.

### 1. **Plaintiff Sufficiently Pled What Defendants Misappropriated**.

Plaintiff sufficiently alleged the proprietary information Defendants misappropriated – the "in-video interactive and immersive 'shoppable' e-commerce content" and video capture technology that is at the heart of the MyChannel Video Platform.  Cplt. p. 4 and ¶¶ 51-57.  As alleged, Plaintiff's "Confidential Information" does not just include its features, but also its "development, design details and specifications, financial information, procurement requirements, engineering and manufacturing information."  *Id.* at Ex. A, § 1(a).  As further alleged, Plaintiff shared its Confidential Information with Defendants under the NDA throughout their six-month relationship.  *See Id.* ¶¶ 26-28, 29, 34 and at Ex. A thereto § 9.  At the pleading stage, Plaintiff is not required to do more.  *Compare M.H. Eby, Inc. v. Timpte Indus.*, No. 19-386, 2019 U.S. Dist. LEXIS 125086, at *6-7 (E.D. Pa. July 26, 2019) ("A party is not required to identify its alleged trade secrets with particularity in its initial pleadings, because doing so could expose the trade secrets that the party is seeking to protect."), *with* Defs. Br. at p. 7.

As further grounds for dismissal, Defendants make the unsubstantiated argument that they never had the "opportunity to misappropriate the MYC Video Platform" because as alleged, the MYC Video Platform was not fully integrated into *Sunday Service*.  Defs. Br. at p. 8.  Again, this is a heightened pleading standard for an NDA breach that does not exist in the law.  Plaintiff has properly alleged that Defendants used its technology and other proprietary information to launch its own e-commerce platform, *Sunday Service*.  *See* Cplt. ¶¶ 53, 56 and 66.  Any arguments to the contrary are just that – defenses to be raised by Defendants in the future, not proper grounds for a motion to dismiss.  Plain and simple, Defendants' incorporation of Plaintiff's proprietary information in *Sunday Service* is prohibited under the NDA.  *See Id.*

¶¶ 58-66. *See generally Sizemore v. Hotwire Communs., LLC*, No. 14-5543, 2015 U.S. Dist. LEXIS 64389 (E.D. Pa. May 18, 2015) (denying defendants' motion to dismiss because plaintiff had adequately pled a breach of NDA claim); *Yeiser Research & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1048-49 (S.D. Cal. 2017).

### 2. **The NDA Does not Contain a Relevant Condition Precedent**.

Finally, Defendants rely on an incorrect reading of the NDA <u>and</u> the wrong subsection to argue that Plaintiff failed to allege a condition precedent to support an NDA breach claim. As alleged, the NDA violation is based on subsection <u>1(a)</u>, not 1(b), which only applies to the exchange of third-party information. *See* Cplt. ¶¶ 52-56 and 66. As the Complaint brings only a Section 1(a) breach claim, there is no precondition that needs to be alleged. Defs. Br. at pp. 8-9.

To make their leap of logic, Defendants must contort the relevant provisions of the NDA concerning the exchange of confidential information, and the expressed differences if that exchange is between the contracting parties or involves third parties. But Section 1(b) relied on by Defendants to argue that the Complaint fails to allege a precondition only applies to <u>third parties</u> and not to Defendant Yeezy and Plaintiff:

'Confidential Information' means **(a)** any financial, technical and non-technical information related to a party's business and current, future and proposed products and services of each of the parties, including for example and without limitation, each party's respective information concerning research, development, design details and specifications, financial information, procurement requirements, engineering and manufacturing information, customer lists, business forecasts, sales information and marketing **and (b) any information a party has received from a third party** that may be disclosed and which that party has an obligation to the third party to treat as confidential or proprietary, except that information disclosed by Discloser (defined below) will be considered Confidential information of Discloser by Recipient (defined below), only if the information (a) is provided as information fixed in tangible form or in writing (e.g., paper, disk, or electronic mail), is conspicuously designated as 'Designated' (or with some other similar legend) or (b) if provided orally or visually, is identified as confidential at the time of disclosure and confirmed in writing within thirty (30) days of disclosure.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO., No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Cplt. at Ex. A thereto, § 1(a)-(b) (emphasis added).   The NDA is clear that it contemplates two types of confidential information: (a) Plaintiff's information (broadly defined) and (b) information from a third party.   Only in the latter case is there a condition precedent that would have to be pled in the Complaint.

Consequently, Plaintiff has properly alleged a breach of the NDA, and the Court should deny Defendants' Motion with respect to the First Claim for Relief.

## C. __The Complaint Properly Alleges its Claims for: (1) Fiduciary Duty of Loyalty Breach (Third Claim); (2) Good Faith and Fair Dealing Breach (Fourth Claim); and, (3) Breach of Fiduciary Duties (Fifth Claim)__.

The basis for Defendants' Motion regarding the Complaint's fiduciary duty-type claims (Third through Fifth Claims) is, again, a misplaced reliance on the unsigned "term sheet." *See* Section IV.A, *supra*, and Defs. Br. at pp. 15-17.  Defendants bootstrap their malformed argument that a "partnership" could not arise because it is inconsistent with the unsigned term sheet with an equally fallacious argument that independent fiduciary duties cannot be pled either.   However, both arguments miss the point: Plaintiff's Complaint sufficiently alleges: (a) that an oral partnership arose between and among the parties independent of the negotiations over the "term sheet," as well as (b) fiduciary duties both premised on the oral partnership and independent of it.   Cplt. ¶¶ 5, 19-20, 25-29 and 32.   And the Complaint sufficiently pleads all the allegations required for each of its three independent claims based on a fiduciary relationship and duties of Defendants.  *See Id.* ¶¶ 75-83, 85-91 and 93-98.

The Complaint has adequately alleged the existence of an oral or implied partnership (*see* Cplt. ¶¶ 19-29), and the defenses' arguments to the contrary do not go to the pleading stage; they are defenses at best.  *See Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961, 971 (N.D. Cal. 2015) ("The existence of a partnership or joint venture is a question of fact determined by a preponderance of the evidence.").   It is well-settled that a partnership is "the association of two or more persons to carry on as co-owners a business for profit . . .   Similarly, a joint venture is an undertaking by two or more persons jointly to carry out a single business enterprise for profit. . . .   From a legal

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

standpoint, both relationships are virtually the same . . . [and] [e]ither relationship may be formed orally." *Id.*[5]  Further, the Complaint has also properly alleged the "conduct and circumstances from which an intention to operate a business as co-owners . . . may be inferred. . . ." *Second Measure*, 143 F. Supp. 3d at 978; *see* Cplt. ¶¶ 19-29.

Consistent with their approach to precedent and citations throughout their moving papers, Defendants rely almost exclusively on cases decided on summary judgment, not on a 12(b)(6) motion to dismiss, to seek dismissal of the Third through Fifth Claims.  *See Rennick*, 77 F.3d at 315;  Defs. Br. at p. 11.  As a result, Defendants conveniently ignore that it is well-settled that the question of  whether parties intend "their oral agreement to be immediately effective or only to become binding on the execution of the writing" depends on the *"surrounding circumstances"* and "is ordinarily a question of fact to be resolved by the trial court or jury,"  not one to be decided at the Rule 12(b)(6) motion to dismiss stage.  *McKeon v. Giusto*, 44 Cal. 2d 152, 158 (1955); *see Second Measure*, 143 F. Supp. 3d at 978-79.

Here, the allegations of the extent of the negotiations, discussions and conduct of Defendants upon which Plaintiffs reasonably relied for more than six months are legion, warranting denial of the Motion.  Cplt. p. 3, ¶¶ 14, 21-22, 33, 36, 47, 50 and 69-71.

### 1. Plaintiff Adequately Identifies the Material Terms of the Parties' Partnership.

Defendants' fundamental argument seeking dismissal of the Complaint's Third, Fourth and Fifth Claims is that they do not allege the necessary terms of the parties' partnership.  Defs. Br. at pp. 13-14.  Defendants' related contention that the Court has "no way" of ascertaining the parties' obligations from a read of the Complaint is misguided.  It ignores that the Complaint alleges how the partnership came to be, the goals of the partnership, work performed for the partnership, and discussions about

---

[5]      The application of California or Pennsylvania substantive law should make no difference to the Court's analysis as to whether an oral partnership and its elements have been properly alleged as the law of both states is consistent on the point.  *See Knit With v. Knitting Fever, Inc.*, 742 F. Supp. 2d 568, 580 (E.D. Pa. 2010).

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

generating and sharing profits.  *See* Cplt. p. 5, ¶¶ 20, 25-29, 32 and 39-42.  Despite Defendants' protestations to the contrary, "a plaintiff need not allege [at the pleading stage] further formalities…because the existence of a partnership is determined from the intent of the parties," a fact intensive endeavor that is inappropriate at the motion to dismiss stage. *Second Measure,* 143 F. Supp. 3d at 971-72 (internal citations omitted).

Defendants' case law is inapplicable as none of the law cited is in a Rule 12(b)(6) motion to dismiss context.  *See* Defs. Br. at pp. 13-15: *Okun v. Morton*, 203 Cal. App. 3d 805, 817 (1988) (reversing judgment award on *appeal* but affirming that the contract was not too uncertain to be enforced); *Weddington Productions, Inc. v. Flick*, 60 Cal. App. 4th 793, 815 (1998) (reversing judgment *on appeal* because parties had not agreed to all necessary terms and there was no signed writing as required by California law); *Dimas, LLC v. Inv. Grade Loans (In re Dimas, LLC)*, No. 02-51420-MM, 2007 Bankr. LEXIS 2516, at *47-48 (Bankr. N.D. Cal. July 23, 2007) (*following bench trial*, court found that there was no joint venture); *Kahn Creative P'ships, Inc. v. Nth Degree, Inc.*, No. CV 10-932-JST (FFMx), 2011 U.S. Dist. LEXIS 34248, at *19, *25-26 (C.D. Cal. Mar. 29, 2011) (*summary judgment* denied because "actions and words of the parties" could allow a trier of fact to "reasonably find that a partnership existed"); *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 616 (1991) (affirming *on appeal* [trier of fact's] finding that there was a breach of contract, but reversing damages award); *Sandberg v. Jacobson*, 253 Cal. App. 2d 663, 667-69 (1967) (affirming *on appeal* trial court's judgment *following trial* that subsequent acts of the parties did not demonstrate intent to create partnership).

Defendants' reliance on another summary judgment case, *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 215 (2006), for the proposition that the parties' roles were too uncertain to be enforceable, actually undermines their arguments here.  *See* Defs. Br. at pp. 14-15.  As Judge Snyder recently opined in *Choi* "[w]here, as here, the purported joint venturers have advanced beyond mere negotiations and have actually begun collaboration, *Bustamante*, which involved a breach of a contract to form a joint

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

14

venture, is distinguishable." *Choi*, 2020 U.S. Dist. LEXIS 51878, at *22 n.3. The Court's reasoning applies with equal force here.

The Complaint properly alleges the necessary terms to establish that the parties entered either an oral or implied partnership and collaboration by alleging: (a) that Plaintiff "made contact with Mr. West in April 2018 to discuss a partnership" (Cplt. ¶ 15); (b) outlined the various negotiations and discussions with Defendants, (c) laid out in detail the goals of the partnership, including using Plaintiff's technology to improve Defendants e-commerce brand, managing Defendants' e-commerce business, and sharing in those profits (*id.* ¶¶ 20 and 23-29); and, (d) that Plaintiff spent thousands of hours working exclusively for Defendants to bring their joint venture to fruition (*id.* ¶¶ 34-35). *See Holmes v. Lerner*, 74 Cal. App. 4th 442, 458-59 (1999) (parties' agreement was not too indefinite because both parties had manifested their mutual intent to take the plaintiff's idea and make it concrete). As a result, the Motion should be denied as to the Third through Fifth Claims.

## 2. Plaintiff has Properly Pled its Fiduciary Duty Claim (Fifth Claim) Against Defendant West.

Defendant West next argues that Plaintiff has failed to demonstrate the existence of a fiduciary or "special" relationship and that West did not "knowingly undertake to act on behalf and for [Plaintiff's] benefit." Defs. Br. at pp. 15-17. Despite West's claims, Plaintiff has adequately alleged the existence of a fiduciary relationship, either through partnership or through the exchange of proprietary information, that Defendant West breached his duty, and that Plaintiff suffered damages as a result of West's breach. *See* Cplt. ¶¶ 75-83, 85-91 and 93-98. All that Plaintiff needs to do at this stage, which it has done, is to sufficiently plead its causes of action. *See Treefrog Devs., Inc. v. Seidio, Inc.*, No. 13cv0158-IEG (KSC), 2013 WL 4028096, 2013 U.S. Dist. LEXIS 110760, at *20-21 (S.D. Cal. Aug. 6, 2013).

To plead a claim for breach of fiduciary duty under California law, a plaintiff must allege (1) the existence of a fiduciary relationship giving rise to a fiduciary duty,

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

(2) breach of that duty, and (3) damage proximately caused by the breach. *Treefrog, 2013 U.S. Dist. LEXIS 110760, at *19*. Here, the Complaint properly alleges that there was a fiduciary relationship between the parties by virtue of their oral agreement and conduct as business partners. *See* Cplt. ¶¶ 76-77. When a partnership, whether oral, implied or written, exists, California law is clear that the "partners owe fiduciary duties to the partnership and to other partners." *See Id.* at *19-20 (citing Cal. Corp. Code § 16404(a)); *Alvarado Orthopedic Research, L.P. v. Linvatec Corp.,* No. 11-CV-246-IEG (RBB), 2011 WL 3703192, 21 U.S. Dist. LEXIS 94142, at *11-12 (S.D. Cal. Aug. 23, 2011)* ("Examples of relationships that impose fiduciary duties as a matter of law include "a joint venture, a partnership, or an agency [citations omitted].").

Plaintiff has alleged sufficient facts to establish that the parties' conduct throughout their six-month business relationship developed into an oral partnership and that Plaintiff entrusted its confidential proprietary information to West, and when coupled with West's own alleged conduct, he became Plaintiff's fiduciary. *See* Cplt. ¶¶ 19-50. There is simply no requirement, as West would have this Court believe, for a party to allege at the pleading stage that the other party "knowingly undertake to act on behalf and for [Plaintiff's] benefit" when, as alleged, the parties "enter[ed] into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008).

West's remaining contentions concerning the parties' bargaining disparity, or Plaintiff's business savvy, are merely supposition of counsel, are not found within the four corners of the Complaint, and should be ignored for the purposes of the Court's Rule 12(b)(6) motion to dismiss analysis. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Plaintiff has sufficiently alleged that a fiduciary relationship arose between West and Plaintiff, that West breached these duties, and Plaintiff was damaged as a result. *See* Cplt. ¶¶ 19-20, 46-50, 53, 55, 57 and 97. West's argument to the contrary found in the defense's brief that the parties simply participated in "arm's length negotiations" is not only false, but would require this Court to make a

16

factual determination, which is improper at the pleading stage. *See* Defs. Br. at pp. 16-17. Further, the cases cited by Defendants in support of this proposition, like so many of Defendants' other cases, either utilize a different motion standard or contain distinguishable facts. For the reasons previously described Defendants' lead case of *Rennick* simply does not apply. *See Rennick*, 77 F.3d at 313.[6]

Finally, Defendants' reliance on *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375 (2008) is curious as that case actually supports Plaintiff's position that a fiduciary duty can be created when proprietary "information [is] provided by one party to another." *Id.* at 391. *City of Hope* was decided post-trial, and despite Defendants' arguments to the contrary, it holds that the exchange of confidential information "may be considered by the trier of fact in deciding whether a fiduciary relationship exists..." *Id.* at 391. Further, even though the parties, unlike as alleged here, fully executed a contract that precluded the formation of a partnership or joint venture, the court still found that a fiduciary duty and breach were properly alleged at the pleading stage. *Id.* at 382-83.

### D. **The Complaint Properly Pleads a Claim for Promissory Estoppel (Second Claim)**.

It should come as no surprise to find that Defendants use their misplaced reliance on the unsigned "term sheet" to argue that Plaintiff's promissory estoppel claim should also be dismissed. Defs. Br. at pp. 17-20. Defendants further argue that Plaintiff cannot allege "reasonable reliance" as a matter of law (though the Complaint does), and that the promises described in Plaintiff's Complaint are "ambiguous." *Id.* But none of these arguments support a Rule 12(b)(6) motion, and Defendants know better. The issue of whether Plaintiff's reliance was "reasonable" and/or whether Defendants' promises

---

[6] Defendants' reliance on *Comercializadora Recmaq Limitada v. Hollywood Auto Mall, LLC*, No. 12cv0945 AJB (MDD), 2013 WL 2248140, 2013 U.S. Dist. LEXIS 71292, at *41-43, (S.D. Cal. May 20, 2013) is misplaced as it involved the issue of whether one of the parties became a fiduciary of the other at the time the companies negotiated an arm's length contract. Here, Plaintiff alleges that the parties entered into an oral/implied partnership and that, pursuant to California (or Pennsylvania) law, a fiduciary duty exists. *See* Cal. Corp. Code § 16404(a); 15 Pa. Cons. Stat. § 8447(b).

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

were unambiguous, are questions of fact (and defenses) at best and are not ripe for adjudication at this stage. *Cogenra Solar, Inc. v. SolarCity Corp.*, No. 16-cv-05481-VC, 2017 U.S. Dist. LEXIS 130863, at *3 (N.D. Cal. Aug. 16, 2017) (denying motion to dismiss because reasonable reliance is a question of fact generally reserved for the jury); *Zinszer*, 2010 U.S. Dist. LEXIS 157124, at *16 (same).

To properly state a claim for promissory estoppel under California law, a party must only allege: (A) the existence of a clear and unambiguous promise; (B) reliance; (C) that the reliance was reasonable and foreseeable; and (D) resulting injury. *See Treefrog*, 2013 U.S. Dist. LEXIS 110760, at *22. Plaintiff has done just that. *See* Cplt. pp. 1, 4-5, ¶¶ 20, 23, 31-32, 36, 40, 49 and 69 (clear and unambiguous promise allegations); *id.* at pp. 2-3, ¶¶ 21-22, 33, 36 and 71 (reliance allegations); *id.* ¶¶ 19-21, 31 and 70-71 ("reasonable reliance" allegations); and *id.* ¶¶ 46, 67, 71 and 73 (injury allegations).

As alleged, the unsigned "term sheet" is only one example of the many promises Defendants made so that Plaintiff's work and collaboration would continue uninterrupted. *See Id.* ¶ 31 ("[i]t was this Term Sheet, *coupled with Mr. West's promise of even more economic reward in the future*, that understandably encouraged MYC and its founders to go 'all in' and devote all of their time and resources to the partnership." (emphasis added)). It is Defendants, not Plaintiff, that are exclusively relying on the unsigned "term sheet" to prove its entitlement to dismissal.[7]

Defendants continue to rely on case law that applies a different procedural standard. *Azco Biotech, Inc. v. Qiagen, N.V.*, No. 12-cv-2599-BEN (DHB), 2015 WL

---

[7] Defendants, in the alternative, argue that Plaintiff's promissory estoppel claim fails because it is based on the NDA. *See* Defs. Br. at p. 20 n.13. That is false. Plaintiff's claim for promissory estoppel is not premised upon the NDA, but rather on the various promises Defendants made to Plaintiff in order to entice Plaintiff to continue to work for and with Defendants. As such, Defendants' reliance on *J.B. Enters. Int'l v. Sid & Marty Kroft Pictures Corp.*, No. CV 02-7779 CBM (SHx), 2003 WL 21037837, 2003 U.S. Dist. LEXIS 7668 (C.D. Cal. Mar. 3, 2003) is misplaced.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

12516024 (S.D. Cal. July 2, 2015) (*see* Defs. Br. at p. 18) supports Plaintiff's position here.  There, when the defendant moved under Rule 12(b)(6) to dismiss the plaintiff's promissory estoppel claims, the *Azco* court denied defendants' motion, holding that the existence of the term sheet presented a question of fact and that the plaintiff's promissory estoppel claim was properly pled.  Order, *Azco Biotech, Inc. v. Qiagen, N.V.*, No. 12-CV-2599-BEN (DHB), 2013 U.S. Dist. LEXIS 119118, at *27-29 (S.D. Cal. Aug. 19, 2013); *see also United States ex rel. Ling v. City of L.A.*, No. CV 11-974 PSG (JCx), 2018 U.S. Dist. LEXIS 136589, at *105 (C.D. Cal. July 25, 2018) ("Whether these claims can be properly characterized as enforceable contracts is a question of fact, one that the Court cannot pursue at this time.").[8]

Defendants next argue that Plaintiff's reliance on Defendants' promises cannot be alleged to be "reasonable" presumably as a matter of law due to the existence of the unsigned draft "term sheet."  Defs. Br. at p. 19.  But Defendants cite to no case law to support their position that at the pleading stage "reasonableness" of reliance can be determined by the Court.  Defendants' argument requires the Court to determine, as a matter of law and without the benefit of a full record, what is "reasonable," which is improper at this juncture.  *See Cogenra Solar*, 2017 U.S. Dist. LEXIS 130863, at *3 ("the question of whether a plaintiff's reliance is reasonable is a question of fact") inappropriate for a motion to dismiss); *see also Treefrog*, 2013 U.S. Dist. LEXIS 110760, at *25-26 (same).

---

[8]    Defendants' use of borrower/lender cases to support their argument that there can be no fiduciary duty claim arising out of their relationship is unfounded. Those cases involve unique fact patterns that revolve around whether a lender owes the borrower an independent duty of care that could be the basis of a promissory estoppel claim, significantly different facts than present here.  *See Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150 (2016); *Ehlert v. Am.'s Servicing Co.,* No. 11CV1359 JLS (BLM), 2011 WL 4862426, 2011 U.S. Dist. LEXIS 118072 (S.D. Cal. Oct. 12, 2011); *Granadino v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411 (2015).

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Defendants ignore the totality of Plaintiff's allegations concerning Defendants' conduct and Plaintiff's relationship with Defendants that support reasonable reliance. There was no written agreement in existence when many of the alleged statements were made (*see* Cplt. ¶¶ 19-22); Defendants had close personal or working relationships with Plaintiff's founders (*see id.* ¶¶ 19-20, 25-26, 37, 44-45); contemporaneous or later allegations show that the parties acted as if there was a binding commitment (*see id.* ¶¶ 37, 42); Defendants held themselves out as fully committed to the partnership (*see id.* ¶ 43) and their representations made that Plaintiff would be rewarded for working exclusively for Defendants (*see id.* ¶ 49). As such, Plaintiff has sufficiently alleged reasonable reliance and, at most, the unsigned "term sheet" creates a question of fact as to whether Plaintiff's reliance was "reasonable." *See Treefrog*, 2013 U.S. Dist. LEXIS 110760, at *25-26.

Finally, as the Complaint alleges, throughout their six-month relationship, Defendants made clear and specific promises to Plaintiff about economic reward, partnership, division of work, integration of the MYC Video Platform and payment based on increased sales from Yeezy's e-commerce platform. *See Id.* at pp. 1, 4-5, ¶¶ 20, 23, 31, 36, 40, 49 and 69. As alleged, Defendants' promises are "definite enough that a court can determine the scope of the duty." *See Moncada v. West Coast Quartz Corp.*, 221 Cal. App. 4th 768, 779-80 (2013) (overturning dismissal of promissory estoppel because promise to "pay [employees] an amount sufficient to retire upon" was sufficiently definite). At the pleading stage, "a promise need only be definite enough that a court can determine the scope of the duty" and whether an award of damages would have a "rational basis." *Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031, 1044-45 (2010).

In sum, Plaintiff has properly pled all the elements of promissory estoppel under either California or Pennsylvania law, and Defendants' introduction of factual disputes is not proper. *Treefrog*, 2013 U.S. Dist. LEXIS 110760, at *25-26 ("Except in rare cases where the undisputed facts leave no room for a reasonable difference of opinion,

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

20

the question of whether a plaintiff's reliance is reasonable is a question of fact." (citing *Wilcox v. EMC Mortgage Corp.*, No. SACV 10-1923 DOC (JCGx), 2011 WL 10065501, 2011 U.S. Dist. LEXIS 82128, at *6 (C.D. Cal. July 25, 2011) (holding reasonableness is "a question for the fact-finder"))).  As such, the Court should deny Defendants' Motion as to the Second Claim.

### E. Plaintiff has Properly Pled Claims for Unjust Enrichment (Sixth Claim) and *Quantum Meruit* (Seventh Claim).

Defendants next argue that California "does not recognize unjust enrichment as an independent cause of action," and that *quantum meruit* and unjust enrichment should be dismissed from the Complaint because the "term sheet" – the document upon which they so heavily rely – they now argue is "unenforceable."  *See* Defs. Br. at p. 21.  But to make this argument, Defendants must ignore well-established Ninth Circuit precedent recognizing unjust enrichment as a valid claim:

> While California case law appears unsettled on the availability of such a cause of action, this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract . . . *We therefore allow the cause of action, as we believe it states a claim for relief as an independent cause of action or as a quasi-contract claim for restitution.*

*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (emphasis added).[9]  *See also Astiana v. Hain Celestial Grp., Inc.*, 738 F.3d 753, 762 (9th Cir. 2015) (observing minimal requirements for pleading quasi-contractual claims).  *Quantum meruit* and unjust enrichment are both quasi-contractual equitable remedies "implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant."  *Swafford v. IBM*, 383 F. Supp. 3d 916, 931 (N.D. Cal.

---

[9]    Defendants ignore the 9th Circuit precedent, and instead rely on two District Court opinions (one unpublished) that pre-date *ESG Capital.  See Azco Biotech, Inc. v. Qiagen, N.V.*, No. 12-cv-2599-BEN (DHB), 2011 WL 3703192 (S.D. Cal. Jul. 2, 2015); *Valenziano v. Orchard Enters., Inc.*, No. CV 10-9754-JFW (PLAx), 2011 WL 13217770 (C.D. Cal. Jan. 18, 2011).

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

2019).  Plaintiff's Complaint includes these elements (*see* ¶¶ 100-02) and far exceeds the required standard.

The Complaint does not allege that Defendants owe Plaintiff money for services performed under an unenforceable contract as misframed by Defendants, but rather that Defendants have been unjustly enriched "from their exposure to and use of Plaintiff's proprietary information, together with the labor and expertise provided by Plaintiff to Defendants at [Defendants'] request."  Cplt. ¶ 102.  Additionally, Defendants' silence as to the *quantum meruit claim* speaks volumes.  Plaintiff's allegations straightforwardly satisfy the elements of this claim: (1) Defendants requested, by words or conduct, that Plaintiff perform services for the benefit of Defendant (*see* Cplt. ¶¶ 101, 105); (2) Plaintiff performed the services as requested (*see id.* ¶¶ 71, 105); (3) Defendants have not paid Plaintiff for the services (*see id.* ¶¶ 34, 42); and (4) Plaintiff reasonably expected to be paid for the services rendered (*see id.* ¶ 71).  *See* <u>*Swafford v. IBM*, 383 F. Supp. 3d 916, 931 (N.D. Cal. 2019)</u> (stating elements for *quantum meruit*).  The Court should deny Defendants' Motion as to the Sixth and Seventh Claims.

## V.    **CONCLUSION**[10]

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' Motion, and for such other and further relief as it deems proper.

---

[10]    If the Court, *arguendo*, rules in favor of any part of the motion to dismiss, the dismissal should be without prejudice and Plaintiff should be given leave to amend to address any pleading deficiencies.  *Galindo v. City of San Mateo*, No. 16-cv-03651-EMC, 2016 U.S. Dist. LEXIS 169630, at *3-4 (C.D. Cal. Dec. 7, 2016).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DATED:  November 30, 2020

**ZUMPANO PATRICIOS & POPOK, PLLC**

   /s/ Michael S. Popok
MICHAEL S. POPOK, Esq.
(Admitted *pro hac vice*)
417 Fifth Avenue, Suite 826
New York, New York 10016
Telephone: (212) 381-9999
Facsimile:  (212) 320-0332

*and,*

**GERAGOS & GERAGOS, APC**
MARK J. GERAGOS, Esq.
BEN J. MEISELAS, Esq.
MATTHEW M. HOESLY, Esq.
644 South Figueroa Street
Los Angeles, California 90017
Telephone:  (213) 625-3900
Facsimile:   (213) 232-3255

*Attorneys for Plaintiff*, MyChannel, Inc.

EXHIBIT A

**Exhibit A**

| **Defendants' Mischaracterizations** | **Plaintiff's Allegations** |
|---|---|
| "The Complaint is devoid of any facts to show that Defendants misappropriated and used *Plaintiff's* proprietary technology." Defs. Br. at 2.<br><br>"First, Plaintiff's claim appears to hang solely on the allegation that *Sunday Service* includes 'shoppable' functionality." Defs. Br. at 7. | "Incredibly, it was not just MYC's founders that noticed the identity between the *Sunday Service* e-commerce component and MYC's proprietary information and technology. *Some of Mr. West's closest confid[a]nts and business advisors* reached out to MYC's founders noting the similarities, and even went so far *as to compliment* MYC for what they reasonably believed was its work." Cplt. at ¶ 53.<br><br>"Obviously not chastened by ripping off MYC in the initial version of the *Sunday Service*, Defendants' video content soon incorporated a 'shoppable' functionality which is specifically prohibited by the NDA." Cplt. at ¶ 55.<br><br>"Defendant Yeezy breached the NDA by using MYC's Confidential Information, including the technology that comprises the MYC Video Platform, to launch its own channel with streaming and on-demand video content, *Sunday Service*, with shoppable content." Cplt. at ¶ 66. |
| "Plaintiff places great weight on the Term Sheet as the basis of its claims..." Defs. Br. at 5. | "It is this Term Sheet, *coupled* with Mr. West's promise of even more economic reward in the future, that understandably encouraged MYC and its founders to go 'all in' and devote all of their time and resources to the partnership." Cplt. at ¶ 31 (emphasis added). |

| Defendants' Mischaracterizations | Plaintiff's Allegations |
|---|---|
| (continued) "Plaintiff places great weight on the Term Sheet as the basis of its claims..." Defs. Br. at 5. | <u>Claim for Breach of NDA</u><br>"Defendant Yeezy breached the NDA by using MYC's Confidential Information, including the technology that comprises the MYC Video Platform, to launch its own channel with streaming and on-demand video content, *Sunday Service*, with shoppable content." Cplt. at ¶ 66.<br><br><u>Claim for Promissory Estoppel</u><br>"Defendants West and Yeezy made numerous promises and representations to Plaintiff throughout their six-month business relationship as alleged above. These promises included: (1) investing $10 million into MYC; (2) creating and running Yeezy's e-commerce division in partnership with MYC and sharing in the resulting profit; (3) maintaining the confidentiality of Plaintiff's proprietary technology pursuant to the NDA; (4) compensating Plaintiff for its thousands of hours of labor provided to Defendants over the course of six months; and (5) reimbursing it for other investments made, including equipment acquisition and living expenses while working for Yeezy and the partnership." Cplt. at ¶ 69.<br><br><u>Claim for Violation of the Obligation of Good Faith and Fair Dealing</u><br>"Through multiple meetings and oral and written exchanges, Plaintiff and Defendant West agreed on the terms to govern the oral partnership." Cplt. at ¶ 77. |

| Defendants' Mischaracterizations | Plaintiff's Allegations |
|---|---|
| (continued) "Plaintiff places great weight on the Term Sheet as the basis of its claims..." Defs. Br. at 5. | <u>Claim for Violation of Duty of Loyalty</u> "Defendant West breached his duties of good faith and fair dealing by failing to compensate Plaintiff for its labor, expenses, and expertise, as well as by independently using Plaintiff's proprietary information for a partnership opportunity, as described herein. In doing so, he was not honest in fact and evaded the spirit of the parties' bargain." Cplt. at ¶ 88.<br><br><u>Claim for Breach of Fiduciary Duties</u> "Defendant West had a fiduciary duty to live up to Plaintiff's trust by not misusing Plaintiff's proprietary information, as well as its labor and work product, without any intention of providing it with fair and earned compensation." Cplt. at ¶ 95.<br><br><u>Claim for Unjust Enrichment</u> "MYC conferred benefits on Defendants by contributing thousands of hours of labor, proprietary technology, design, and expertise that MYC had spent years developing, as well as investing in equipment and covering relocation and living expenses, all to integrate the MYC Platform with Defendant[] Yeezy['s] e-commerce business." Cplt. at ¶ 100.<br><br><u>Claim for *Quantum Meruit*</u> "As alleged herein, MYC conferred benefits on Defendants, at Defendants' request, in the form of proprietary information, labor, and expertise." Cplt. at ¶ 105. |

| Defendants' Mischaracterizations | Plaintiff's Allegations |
|---|---|
| "The Complaint, however, confirms no such partnership ever arose because Plaintiff admits the parties never executed definitive agreements as the Term Sheet required." Defs. Br. at 10. | "The business relationship between Kanye and his Yeezy brand . . . and MYC and its founders . . . began with . . . the formation of a lucrative partnership." Cplt. at p. 2.<br><br>"Specifically, the goals of the MYC/Yeezy partnership were to: (a) increase Yeezy's site traffic; (b) increase Yeezy's conversion ratio (*i.e.* customer buys); and (c) enhance Yeezy's customer/viewer experience by improving site functionality." Cplt. at ¶ 27.<br><br>"More than that, Mr. West told the MYC founders that he wanted them to remain in Calabasas, California from that moment forward, to be his partners in the venture, and to work exclusively and around the clock for their new venture to integrate the MYC Video Platform into Yeezy's existing e-commerce business." Cplt. at ¶ 19.<br><br>"This was a huge commitment of time and resources for MYC. But, Mr. West and other senior leadership in his organization promised that if the MYC founders relocated to California and devoted all of MYC's time, attention and resources to Yeezy and Kanye, MYC would be handsomely rewarded including by: (a) being in partnership with Mr. West; (b) having MYC power Yeezy's e-commerce business and share in the profits from increased sales[;] and (c) Mr. West investing $10 million and other |

| **Defendants' Mischaracterizations** | **Plaintiff's Allegations** |
|---|---|
| | resources into the parties' venture." Cplt. at ¶ 20. |
| "Plaintiff now seeks to recover the benefits of the proposed transaction that never came to fruition, reimbursement of amounts it spent pursuing the transaction and damages for alleged breach of the NDA." Defs. Br. at 2. | "Working for Defendants up to 80-hour weeks non-stop for six months, the MYC personnel logged about <u>10,000</u> hours exclusively for Defendants and the partnership. <u>MYC has to date received no compensation from Defendants for its considerable work and value conferred.</u>" Cplt. at ¶ 34.<br><br>"Injustice can be avoided only by enforcing Defendants' promises. Allowing Defendants to use Plaintiff's proprietary information for their benefit without compensation and leaving MYC uncompensated for its investment of millions in resources and expenses based on Defendants' promises[] is inequitable." Cplt. at ¶ 72.<br><br>"As a direct result of Defendants' wrongful conduct, Plaintiff is entitled to: (a) compensatory damages in an amount to be determined at trial, and (b) disgorged profits representing the amount that Defendants obtained in operating their e-commerce business, including on *Sunday Service*." Cplt. at ¶ 73. |
| "Third, Plaintiff asserts a promissory estoppel claim alleging that purported promises in the Term Sheet induced it to devote time and resources to the proposed relationship." Defs. Br. at 3. | "Defendants West and Yeezy made numerous promises and representations to Plaintiff throughout their six-month business relationship as alleged above. These promises included: (1) investing $10 million into MYC; (2) creating and running Yeezy's e-commerce division in partnership with MYC and sharing in the |

| Defendants' Mischaracterizations | Plaintiff's Allegations |
|---|---|
| | resulting profit; (3) maintaining the confidentiality of Plaintiff's proprietary technology pursuant to the NDA; (4) compensating Plaintiff for its thousands of hours of labor provided to Defendants over the course of six months; and (5) reimbursing it for other investments made, including equipment acquisition and living expenses while working for Yeezy and the partnership." Cplt. at ¶ 69. |
| "The MYC Video Platform enables 'shoppable' video content, *id.* ¶ 11, which *refers generally to online videos with integrated e-commerce features*." Defs. Br. at 4. (emphasis added). | "*MYC and MYC alone in the industry provides, through its proprietary video platform, a unique,* 'white label,' in-video interactive and immersive 'shoppable' e-commerce content experience (the 'MYC Video Platform') that works seamlessly with all video content." Cplt. at p. 4. (emphasis added).<br><br>"In and around 2016, the MYC founders focused on applying the company's technological prowess to the B2C e-commerce space. Specifically, it developed the MYC Video Platform to transform ordinary streaming or on-demand video content into interactive and immersive 'shoppable' content to allow the consumer to never leave the video experience in order to purchase merchandise featured in the video." Cplt. at ¶ 11.<br><br>"The cutting-edge MYC Video Platform took over sixteen (16) months to develop. Combining licensed video frame capture and metadata technology with its sentiment analysis AI engine, it: (a) breaks down a video into its individual |

| **Defendants' Mischaracterizations** | **Plaintiff's Allegations** |
|---|---|
| | frames, sometimes numbering into the millions depending upon the video's length; (b) mines the metadata embedded in each frame to isolate individual merchandise depicted; and (c) instantaneously searches the internet for a match, thereby allowing the user to immediately purchase the item without ever leaving the on-demand or live streaming video experience." Cplt. at ¶ 12. |
| "Rather, Plaintiff alleges communications between the parties ceased sometime after October 2018, without an executed agreement in place." Defs. Br. at 6. | "Kanye and Mr. Duggin met in person in October 2018. During the meeting, Mr. Duggin pressed Mr. West for the money promised and the payoff for the hard work performed. During this face-to-face, Mr. West again promised to move forward with the partnership with MYC, but with a new leadership team at Yeezy." Cplt. at ¶ 49.

"Despite these new promises by Mr. West, and with no money repaid to or invested in MYC, Mr. Duggin returned home to MYC empty-handed. Soon thereafter, all communication with Mr. West and Yeezy ceased, leaving MYC and its founders in the lurch and out millions of dollars." Cplt. at ¶ 50. |

7